Mercedes F. KERSEY, Appellee,

v.

Louis JEFFERSON, Appellant.

Superior Court of Pennsylvania.

Argued Dec. 13, 2001.

Filed Jan. 31, 2002.

---

Nycole E. Watson, Philadelphia, for appellant.

David E. Davis, Holland, for appellee.

Before JOYCE, OLSZEWSKI and MONTEMURO *, JJ.

MONTEMURO, J.

¶ 1· Appellant, Louis Jefferson, appeals from the February 15, 2001, Order reducing his support obligation from $1150 per month to $946 per month, crediting him with $3578.70 for overpayment of child care expenses, and directing Appellee, Mercedes F. Kersey, to pay $1000 for having failed to notify the court of a change in circumstances with regard to child care expenses, as required by Pa.R.C.P.1910.17. We affirm.

¶ 2 The parties are the parents of a son, Malik, born out of wedlock in 1994.[1] They met at the University of Pittsburgh while Appellant was completing his second master's degree. Appellant holds a bachelor's

---

* Retired Justice assigned to Superior Court.

1. The parents' support obligations are unaffected by the fact that the child was born out of wedlock. 23 Pa.C.S.A. § 5102(a).

degree in human physiology, and master's degrees in health education and epidemiology. Appellant enrolled in the University of Pittsburgh's medical school pre-matriculation program in the fall of 1993, but withdrew when Appellee became pregnant. At that point, Appellant accepted a United States government job paying $36,000 annually. Thereafter, Appellant earned $54,000 per year while working for Baird in Connecticut, and $70,000 per year at Pfizer, Inc., in New York City.

¶ 3 In May of 2000, Appellant resigned from Pfizer and enrolled full-time in the pre-matriculation program of the University of Connecticut's medical school, which he estimates will take five years to complete. He works approximately 30 hours per week as a clinical research coordinator at Scirex Corporation in Windsor, Connecticut for $32,000 per year, and currently resides in Hartford, Connecticut. Appellant also pays $760 per month support for a child from another relationship. Appellee, who resides in Pine Hill, New Jersey with Malik, is a public school teacher in Philadelphia. At the time the support action was filed, Appellee and Malik resided in Bristol, Bucks County, Pennsylvania.

¶ 4 On November 22, 1999, the Bucks County Court of Common Pleas entered a support order requiring Appellant to pay $1150 per month, which included $357.87 as a proportionate share of Malik's child care expenses. On October 6, 2000, the Bucks County Domestic Relations Office filed a petition for contempt against Appellant for failing to comply with the Order. One week later, Appellant petitioned for modification because his income had decreased when he left Pfizer and enrolled in the medical school program. On October 27, 2000, the trial court delayed any enforcement action on the contempt petition pending receipt of a Domestic Relations Officer's recommendation based upon a Domestic Relations Support Conference.

¶ 5 At the conference, it was revealed that Appellee had withdrawn Malik from Kindercare Learning Center, a private child care facility, in January 2000, and for ten months thereafter, enrolled him in a free child care program in the Philadelphia public school where she was employed. However, Appellee failed to notify Appellant, the court, or the Bucks County Domestic Relations Office of this change. In November of 2000, Appellee removed Malik from the Philadelphia school and placed him in John Glenn Elementary School in Pine Hill, New Jersey, which charged $208 per month for child care. Following the conference, the Domestic Relations Officer recommended that Appellant's support obligation be reduced from $1150 per month to $946 per month, effective January 1, 2001, to reflect the reduction in Malik's child care expenses and not the change in Appellant's income. The Officer also recommended that jurisdiction be transferred to New Jersey, where Appellee and Malik reside, because neither party resides in Bucks County.

¶ 6 After a hearing, the trial court accepted the Officer's recommendations and entered the February 15, 2001, Order, which lowered Appellant's support obligation, credited Appellant for overpayment of child care expenses during the ten months Malik was in the Philadelphia public school program, and ordered Appellee to pay $1000 for having failed to notify the Court of the change in circumstances regarding Malik's child care. Appellant unsuccessfully moved for reconsideration and now appeals.

■■■ ¶ 7 In reviewing support orders, we are limited to considering whether, based on clear and convincing evidence, the trial court abused its discretion. *Simmons v. Simmons*, 723 A.2d 221, 223

(Pa.Super.1998) (citations omitted). "An abuse of discretion requires proof of more than a mere error of judgment, but rather evidence that the law was misapplied or overridden, or that the judgment was manifestly unreasonable or based on bias, ill will, prejudice, or partiality." *Id.*

¶ 8 Appellant contends that the trial court erred when it failed to consider his earnings history and actual income prior to determining his support obligations. This argument fails.

¶ 9 Child support is a shared responsibility requiring both parents to contribute to the support of their children in accordance with their relative incomes and ability to pay. *Depp v. Holland,* 431 Pa.Super. 209, 636 A.2d 204, 208 (1994) (citing *DeWalt v. DeWalt,* 365 Pa.Super. 280, 529 A.2d 508 (1987)). "Where a party voluntarily assumes a lower paying job, there generally will be no effect on the support obligation." Pa.R.C.P.1910.16–2(d)(1). It is well settled that "to modify a support obligation based upon reduced income, a petitioner must first establish that the voluntary change in employment which resulted in a reduction of income was not made for the purpose of avoiding a child support obligation and secondly, that a reduction in support is warranted based on petitioner's efforts to mitigate any income loss." *Grimes v. Grimes,* 408 Pa.Super. 158, 596 A.2d 240, 242 (1991). Effectively, Appellant "must present evidence as to why he or she voluntarily left the prior employment and also as to why the acceptance of a lower paying job was necessary." *Id.* Where a party willfully fails to obtain appropriate employment, his or her income will be considered to be equal to his or her earning capacity. Pa.R.C.P. 1910.16–2(d)(4). A determination of earning capacity must consider the party's age, education, training, health, work experience, earnings history, and child care responsibilities. *Id.*

¶ 10 Because Appellant seeks to modify his support obligation based on the reduction in his income when he enrolled in medical school, we apply the *Grimes* test. Regarding the first prong, we agree with the trial court that Appellant did not voluntarily reduce his income in an attempt to avoid his support obligation. As to the second prong, Appellant argues that his obtaining a part-time job mitigates his income loss. The trial court found, however, that Appellant failed to meet the second prong because he failed to demonstrate why the acceptance of a lower paying job was necessary. (Trial Ct. Op. at 9). We agree. Appellant's income dropped from $70,000 to $32,000 a year when he chose to enroll in medical school. As in *Grimes,* there was no evidence presented by Appellant that he attempted to find a job with a comparable $70,000 salary or as to why finding a job with a comparable salary was not possible. *Grimes, supra* at 243.

¶ 11 Appellant argues that *Grimes* is distinguishable because it did not involve a parent's furthering his education. We agree that no case has yet applied the *Grimes* test when a parent is seeking a support reduction because he or she has chosen to further his or her education. However, we conclude that, in a request for support reduction, the voluntary choice to forego current employment in order to further one's education is an employment decision that should be treated no differently than a decision to change jobs and salary.[2] The *Grimes* Court stressed the

2. Appellant cites *Commonwealth ex rel. McQuiddy v. McQuiddy,* 238 Pa.Super. 390, 358 A.2d 102 (1976) for the proposition that

"[c]ourts have recognized a parent's legitimate desire to forego a lucrative present employment situation in the hope of establishing

importance of considering the children's needs in any employment decision:

> We liken [Appellant's] duty of support to any other fixed obligation, i.e., mortgage, rent, car payment, which one must consider being able to meet upon a change in employment and salary. We believe this consideration should be as important to a parent of a [separated] family as it would be to a parent of an intact family when a change of employment is contemplated.

*Grimes, supra* at 243. Moreover, case law pre-dating *Grimes* supports the same treatment for a decision to pursue an education and a decision to change employment in a request for support reduction. In *Snively v. Snively,* 206 Pa.Super. 278, 212 A.2d 905 (1965), this Court held that a reduction in support was not appropriate when a father left his job to pursue a college degree and experienced a reduction in income, even though he obtained alternate, lesser-paying employment. *Snively, supra* at 907. The *Snively* Court reasoned, and we agree:

> The change of circumstances in this case that affects his earnings and earning power was brought about by the voluntary act of the appellant. His praiseworthy ambition to obtain an education, which may well work to the eventual advantage of his child, cannot be realized at the expense of his obligation to support the child, and ... he cannot

"arrogate unto himself the conditions under which he will support the child."

*Id.; see also Commonwealth ex rel. Cragle v. Cragle,* 277 Pa.Super. 349, 419 A.2d 1179, 1181 (1980).

¶ 12 We agree with the trial court that while Appellant's ambition to obtain a medical degree is "laudable and certainly commendable," it was nonetheless voluntary and "subordinated the immediate financial needs of his children to his career aspirations." (Trial Ct. Op. at 10). Appellant's decision to pursue a medical degree at this time is particularly interesting when he admittedly did not believe that pursuing the same degree was advisable at the time Malik was conceived. (N.T., 2/15/01, at 7). As discussed above, Appellant's status as a full-time student affords him no different treatment under the *Grimes* test. *Grimes, supra* at 243. Therefore, without a showing that he attempted to obtain employment with a comparable $70,000 annual salary or that finding a job with a comparable salary was not possible, no reduction in support is warranted; Appellant has not met this burden.[3]

■ ¶ 13 As Appellant fails to meet the second prong of *Grimes,* the trial court correctly used Appellant's earning capacity to determine his support obligation. *See* Pa.R.C.P.1910.16–2(d)(4). In doing so, the court had before it evidence of Appellant's

---

a rewarding future career." (Appellant's Brief at 2). However, *McQuiddy* is inapplicable to the instant case as it did not involve a parent's choosing to further his education, but one who changed his employment from a salaried attorney position to private practice and suffered a resulting loss in income. *Id.* at 103.

**3.** Our decision in *Beegle v. Rasler,* 395 Pa.Super. 174, 576 A.2d 1100 (1990), is factually distinguishable from the instant case. *Beegle* involved a parent whose change in employ-

ment was involuntary, as he was terminated from his position as an emergency room doctor. *Id.* at 1102–03. Further, because *Beegle* was decided before *Grimes,* it did not require that a parent seeking support reduction show that acceptance of a lower paying job was necessary. *Grimes, supra* at 242. Appellant fails to meet this second prong of *Grimes,* because he failed to produce any evidence that he attempted to find a job with a comparable salary or that finding a job with a comparable salary was not possible. *Id.* at 243.

"age, education, training, health, work experience, earnings history, and child care responsibilities." *Id.* Appellant was 37 at the time of the hearing, held a bachelor's degree and two master's degrees in the health field, and had worked at three jobs within that field. The court settled on Appellant's $70,000 per year salary at Pfizer as indicative of his earning capacity. We find no abuse of discretion.

¶ 14 Appellant next contends that the trial court erred when it excluded as irrelevant evidence of Appellee's alleged willful contempt of a custody order entered by the Philadelphia Common Pleas Court. We disagree.

¶ 15 Admission or exclusion of evidence is within the sound discretion of the trial court. *Hutchison v. Luddy*, 763 A.2d 826, 838 (Pa.Super.2000) (quoting *Turney Media Fuel, Inc. v. Toll Bros.*, 725 A.2d 836, 839 (Pa.Super.1999)). We may reverse only if the trial court clearly abused its discretion or committed an error of law. *Id.* "To constitute reversible error, an evidentiary ruling must not only be erroneous, but [must] also [be] harmful or prejudicial to the complaining party." *Id.* Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Pa.R.E. 401. Irrelevant evidence is not admissible. Pa.R.E. 402. The trial court properly found Appellee's alleged previous contempt of another court's custody order irrelevant to the support issues that were before the court. Accordingly, we find no abuse of discretion.

¶ 16 Next, Appellant argues that the trial court erred when it ordered him to pay child care expenses for Malik at John Glenn Elementary in New Jersey even though Appellee did not consult him regarding this change in child care provider and he did not agree to be responsible for this expense. This argument is without merit.

¶ 17 Appellant's assertion that he is not responsible for this expenditure without his consent is contrary to Pennsylvania law. Pennsylvania Rule of Civil Procedure 1910.16–6(a) provides:

> Reasonable child care expenses paid by the custodial parent, if necessary to maintain employment or appropriate education in pursuit of income, are the responsibility of both parents. These expenses shall be allocated between the parties in proportion to their net incomes and obligor's share added to his or her basic support obligation.

Pa.R.C.P.1910.16–6(a). Appellant also implies that Appellee's removal of Malik from the Philadelphia public school was somehow improper. We find that the trial court ably addressed this argument: "This allegation is strictly a custody issue and not an issue of support .... In this case, the Philadelphia County Court of Common Pleas retains jurisdiction over the parties' custody dispute." (Trial Ct. Op. at 12–13). Based on the record before it, the trial court lowered Appellant's support obligation to reflect the reduction in the cost of Malik's child care. We find no abuse of discretion.

¶ 18 Finally, Appellant contends that the trial court erred when it transferred the support matter to New Jersey. We disagree.

¶ 19 As none of the parties currently reside within the Commonwealth, no tribunal in this state has "continuing, exclusive jurisdiction" over the support order. 23 Pa.C.S.A. § 7205(a)(1). Accordingly, the trial court properly served as an "initiating tribunal" in its transfer of the

matter to New Jersey, where Appellee and Malik reside. 23 Pa.C.S.A. § 7203.

¶ 20 Order affirmed.

¶ 21 OLSZEWSKI, J. files a Dissenting Opinion.

OLSZEWSKI, J., Dissenting.

¶ 1 While the expression of the majority view provides a persuasive analysis and sound rationale, I am obliged to differ and respectfully dissent.

¶ 2 Although I agree with the majority that *Grimes* is controlling, I must disagree as to the majority's application of that standard to the facts of this case. Under *Grimes,* appellant must

> first establish that the voluntary change in employment which resulted in reduction of income was not made for the purpose of avoiding a child support obligation and secondly, that a reduction in support is warranted based on petitioner's effort to mitigate any income loss. In effect, petitioner must present evidence as to why he or she voluntarily left the prior employment and also as to why the acceptance of the lower paying job was necessary.

*Grimes v. Grimes,* 408 Pa.Super. 158, 596 A.2d 240, 242 (1991).

¶ 3 Although appellant cannot avoid his support obligation simply because he is now a full-time student, he is entitled to a reduction in support payments if his change in circumstances warrants such a reduction. The majority found, and I agree, that appellant did not choose to return to medical school to avoid his support obligations, but rather to better his station in life. Unlike the majority, however, I believe appellant has also met the second prong of the *Grimes* test.

¶ 4 Appellant has attempted to mitigate the income loss associated with his return to medical school through the acceptance of part-time employment. Somehow appellant manages to be a full-time medical student and work part time as a clinical research coordinator. As the research position pays $32,000 per year, it appears appellant has found a job which is comparable to his experience. In his previous position, *working full time,* appellant earned $70,000 per year.

¶ 5 Appellant also demonstrated why the acceptance of this lower-paying position was necessary. Appellant presented evidence of his full-time return to medical school. It is reasonable to infer from that evidence that it would be impossible for him to continue to work full time.

¶ 6 Although while enrolled in medical school appellant will be unable to provide as much support to his child, upon graduation his financial situation will improve greatly. Not only will appellant benefit from the sacrifices made in the coming years, but his child will also reap what appellant sows. Just as an increase in support is warranted when a higher-paying position is accepted, a reduction of support may also be warranted when a lower-paying position is accepted. Since appellant did not voluntarily reduce his income to avoid his support obligations and has taken steps to mitigate the income loss, he is entitled to a reduction in his support payments until graduation from medical school. Appellant is doing the best he can and should not be penalized for attempting to further his education.