Lorie PORTUGAL, Appellee,

v.

Howard PORTUGAL, Appellant.

Lorie Portugal, Appellant,

v.

Howard Portugal, Appellee.

Superior Court of Pennsylvania.

Argued Feb. 12, 2002.
Filed May 1, 2002.

Mark A. Momjian, Philadelphia, for Howard Portugal.

Terry W. Vanderpool, West Chester, for Lorie Portugal.

Before FORD ELLIOTT, JOYCE and BECK, JJ.

JOYCE, J.

¶ 1 Wife, Lorie Portugal, appeals from the order entered on July 10, 2001, in the Court of Common Pleas of Chester County, directing her Husband, Howard Portugal, to make monthly support payments on behalf of their two minor children. Husband also files a cross-appeal from the same order. Upon review, we reverse and remand for further proceedings. The relevant facts and procedural history, as aptly stated by the trial court, are as follows.

[Husband] and [Wife] met while students at Rensselaer Polytechnic Institute in the 1980's. She majored in biology; he studied computer science. They married on June 14, 1987. After their marriage, [Wife] continued her education, obtaining a doctorate in veterinary medicine in 1992. In 1997, [Wife] opened her own veterinary care clinic, "Critter Care Veterinary Hospital, P.C.", to address the needs of small animals and exotic pets in the Thorndale area. In January 1999, [Husband] moved to Washington State to begin working for Microsoft Corporation as a Senior Applications Development Consultant. The company paid for his relocation. [Wife] and the couple's two young children, Matthew, born May 7, 1995, and Rebecca, born June 21, 1997, were to have joined him soon after. Instead, the separation became permanent.

[Wife] filed for spousal and child support on September 27, 2000. The court entered a Temporary Order on November 8, 2000 in the amount of $601.00 per month for spousal support and $2007.00 per month as child support. [Husband] moved for a separate listing on the same day. [The trial court] held an evidentiary hearing on June 13, 2001 at which both parties appeared and were represented by counsel. At the hearing, [Wife] agreed to the dismissal of her spousal support claim on the grounds of cohabitation.

Trial Court Opinion, 7/10/01 at 3–4. On July 10, 2001, the trial court entered an order that directed Husband to pay $1599.00 in child support per month from September 27, 2000 until December 31, 2000 and to pay $1625.00 per month thereafter. The trial court also ordered Husband to provide health insurance for the parties' children and to pay fifty-six percent (56%) of the children's unreimbursed medical expenses. Furthermore, since Wife admitted that she was cohabitating with another man while receiving spousal support payments from Husband, the trial court ordered Wife to reimburse Husband at the rate of $200.00 per month. This appeal and cross appeal followed.

¶ 2 In her timely appeal, Wife raises the following issues for our review:

1. Whether Wife's earning capacity should have been used when she testified that she was trying to build her business and would eventually surpass her colleagues who worked for other veterinarians.

2. Whether Husband's income was correctly calculated, given the perquisites

given to him by his company with regard to relocation.

3. Whether Husband's income was correctly calculated, given the fact that his 401(k) contribution was deducted from his gross income.

4. Whether the court's calculation of the taxes to be paid by each party, in consideration of the exemptions given to each party, was correct.

5. Whether the court's calculation of support was incorrect, given the correct findings in regard to the parties' respective incomes.

Appellant's Brief, at 3 (full capitalization omitted).

¶ 3 In his timely cross-appeal, Husband raises the following issues:

1. Whether the trial court committed legal error, abused its discretion, or misapplied the law in failing to direct Wife to cede one of the child dependency exemptions for federal income tax purposes to Husband?

2. Whether the trial court erred, abused its discretion, or misapplied the law in failing to order Wife to pay back in a lump sum the credit owed to Husband as a result of Wife's bad faith continuation of her spousal support claim from the date of filing to the date of hearing?

3. Whether the trial court erred, abused its discretion, or misapplied the law in refusing to allow Husband to make direct payments to the provider for his portion of the childcare expenses?

Cross–Appellant's Brief, at 6.

¶ 4 In child support cases, our standard of review is as follows:

The amount of a support order is largely within the discretion of the trial court, whose judgment should not be disturbed on appeal absent a clear abuse of discretion. An abuse of discretion is not merely an error of judgment, but rather a misapplication of the law or an unreasonable exercise of judgment. A finding that the trial court abused its discretion must rest upon a showing by clear and convincing evidence, and the trial court will be upheld on any valid ground.

*Kessler v. Helmick,* 449 Pa.Super. 113, 672 A.2d 1380, 1382 (1996) (quoting *Griffin v. Griffin,* 384 Pa.Super. 188, 558 A.2d 75, 77 (1989) (*en banc*)). For our purposes, "an abuse of discretion requires proof of more than a mere error of judgment, but rather evidence that the law was misapplied or overridden, or that the judgment was manifestly unreasonable or based on bias, ill will, prejudice or partiality." *Kersey v. Jefferson,* 791 A.2d 419, 423 (Pa.Super.2002) (citations omitted).

¶ 5 In her first issue, Wife argues that the trial court abused its discretion when it based her monthly income for support purposes on her earning capacity rather than on her actual monthly income. Appellant's Brief, at 18. After the parties' hearing, the trial court determined that an individual of Wife's qualifications could earn $55,000.00 per year as an associate veterinarian in an established clinic. Wife argues, however, that the trial court should not have charged her with this earning capacity because she never actually held such a position and because her husband supported her decision to open her own clinic. *Id.* Additionally, Appellant maintains that her future earnings as a self-employed veterinarian will eventually surpass those of her colleagues and will make up for her current limited income. *Id.*

¶ 6 In this Commonwealth, it is well settled that

[c]hild support is a shared responsibility requiring both parents to contribute to

the support of their children in accordance with their relative incomes and ability to pay. *Depp v. Holland*, 431 Pa.Super. 209, 636 A.2d 204, 208 (1994) (citing *DeWalt v. DeWalt*, 365 Pa.Super. 280, 529 A.2d 508 (1987)). "Where a party voluntarily assumes a lower paying job, there generally will be no effect on the support obligation." Pa.R.C.P. 1910.16–2(d)(1).... Where a party willfully fails to obtain appropriate employment, his or her income will be considered to be equal to his or her earning capacity. Pa.R.C.P.1910.16–2(d)(4). A determination of earning capacity must consider the party's age, education, training, health, work experience, earnings history, and child care responsibilities. *Id.*

*Kersey*, 791 A.2d at 423. *Accord DeMasi v. DeMasi*, 366 Pa.Super. 19, 530 A.2d 871, 877 (1987) (holding that "[a] parent's ability to pay support is determined primarily by financial resources and earning capacity.... The obligation of support, then, is measured more by earning capacity than by actual earnings.")

¶ 7 In the instant case, the parties stipulated that Wife would earn $55,000.00 per year if she worked as an associate veterinarian at an established clinic. N.T. Support Hearing, 6/13/01 at 69. Nonetheless, Wife opted to establish her own clinic and currently earns $25,000.00 as its proprietor. Although we recognize that Wife did not voluntarily depart from an associate position that paid $55,000.00 and that Husband supported Wife's decision to open the clinic, the income Wife currently receives is simply not commensurate with her admitted earning potential.

¶ 8 Our court's decision in *Commonwealth ex rel. Raitt v. Raitt*, 203 Pa.Super. 226, 199 A.2d 512 (1964) is instructive. In *Raitt*, a father possessing a doctorate degree in pharmacology voluntarily assumed a position as a local pharmacist instead of seeking a higher paying position with a pharmaceutical research company. *Id.* at 513. Finding that the father's actual earnings did not equal his earning potential, the trial court based the father's support obligation on his earning capacity. *Id.* On appeal, a panel of our Court provided:

> The court below was correct in considering the earning capacity of the defendant. Usually a defendant's earnings represent his earning capacity, but this is not always true and where the court is justified, as here, in finding that the defendant's earning capacity exceeds his earnings, the amount of the order should be determined on the basis of earning capacity.

*Id.*

¶ 9 Like the father in *Raitt*, Wife voluntarily assumed a lower paying position in the face of more lucrative opportunities. Therefore, we do not find that the trial court abused its discretion when it based Wife's income for support purposes on her earning capacity. To hold otherwise would permit Wife to subordinate the immediate financial needs of her children to her own aspirations. *See Kersey*, 791 A.2d at 424.

¶ 10 In her second and third issues, Wife maintains that the trial court abused its discretion when it failed to consider that Husband's earning capacity/income is enhanced by certain "corporate perquisites." Appellant's Brief, at 20–1. Specifically, Wife argues that the reimbursement Husband received from Microsoft for his relocation expenses, Husband's bonuses, Husband's contributions to his 401(k) and Microsoft's matching contribution to Husband's 401(k) should have been considered as income for support purposes. *Id.* We will discuss each of these perquisites in

turn.[1]

■ ¶ 11 In 2000, Appellant left his position in Washington and relocated to Pennsylvania in an effort to reconcile with Wife. To facilitate Husband's move, Microsoft paid $6703.00 in relocation expenses to third parties on Husband's behalf and gave Husband a $10,000.00 relocation bonus. Since Husband was unable to deduct the moving expenses that Microsoft paid to these third parties from his federal income tax return, and since Husband would have to pay tax on the relocation bonus, Microsoft also remitted a "tax gross-up payment" to the IRS in the amount of $12,792.00

¶ 12 In light of this evidence, the trial court deducted the relocation expenses and tax gross-up payment from Husband's gross earnings but did retain the $10,000.00 relocation bonus for support purposes. *See* Trial Court Opinion, 7/10/01 at 3. We do not find that this was an abuse of discretion.

¶ 13 Pursuant to Pa.R.C.P.1910.16–2(d)(2), the trial court need not adjust a support payment for normal fluctuations in earnings. In the instant case, the trial court opted to include Husband's one-time relocation bonus as income for support purposes, *see* 23 Pa.C.S.A. § 4302, but was unwilling to include the non-recurring relocation reimbursement and tax gross-up payment. Although we recognize that Husband's income was temporarily enhanced by the employer's payment of his relocation expenses and the generous tax gross-up payment, we find that it was within the trial court's discretion to characterize these non-recurring payments as normal fluctuations in earnings.

¶ 14 Furthermore, Wife argues that the trial court failed to include Appellant's 2000 and 2001 bonuses in its calculation of income for support purposes. Appellant's Brief, at 20–2. Our review of the record, however, belies this contention.

¶ 15 In 2000, Husband received two bonuses from Microsoft. N.T. Support Hearing, 6/13/01 at 85. Each of these bonuses was reflected in Husband's gross wages on his W–2 statement. Since the trial court never deducted this bonus when calculating Husband's net income for support purposes, we find that the trial court properly included the bonuses as income available for child support.

¶ 16 However, at the time of the hearing in 2001, the trial court did not have the benefit of a W–2 statement. As such, the trial court amortized the wages that Husband received in the first five months of 2001 and added a $3456.00 bonus that Husband received in February 2001. Wife argues, however, that the trial court should have also included a bonus that Husband anticipated receiving in August 2001. Since the receipt of this bonus was not guaranteed and since the amount of the bonus could not be adduced with any reasonable certainty, the trial court refused to include this potential bonus in the calculation of Husband's income. This was proper. *See Urban v. Urban*, 298 Pa.Super. 224, 444 A.2d 742, 745 (1982) (lower

---

1.  Wife also asserts that Microsoft's repayment of Husband's relocation expenses in 1999 and Husband's health insurance benefits are also prerequisites that contribute to Appellant's earning capacity. Appellant's Brief, at 20–1. Nonetheless, Wife concedes that the value of Husband's health insurance policy and the costs associated with the 1999 relocation are not of record. As such, we will not consider these claims. *See Murphy v. Murphy,* 410 Pa.Super. 146, 599 A.2d 647, 652 (1991), *appeal denied,* 530 Pa. 633, 606 A.2d 902 (1992), *cert. denied,* 506 U.S. 868, 113 S.Ct. 196, 121 L.Ed.2d 139 (1992) (holding that an appellate court may only consider those facts which have been duly certified in the record on appeal).

court should not include the possibility of a bonus in a party's income when calculating a support obligation). In light of the aforementioned evidence, we find no merit in Wife's contention that the trial court failed to include Husband's bonuses in the calculation of income.

¶ 17 Moreover, Wife also maintains that the trial court should have included the contribution Husband makes to his 401(k) plan and Microsoft's matching contribution to this plan in its determination of Husband's income. Upon review, we agree with Wife.

¶ 18 We will first determine whether an employee's contribution to a retirement plan is properly included as income. Pursuant to Pa.R.C.P.1910.16–5, the amount of support to be awarded

> is based in large part upon the parties' net monthly income. Monthly net income is determined by subtracting only the following items from monthly gross income:
>
>> (1) federal, state, and local income taxes;
>>
>> (2) F.I.C.A. payments and non-voluntary retirement payments;
>>
>> (3) union dues;
>>
>> (4) health insurance premiums for the benefit of the other party or the children.

Pa.R.C.P.1910.16–5. Upon our consideration of this provision, we find that only non-voluntary retirement payments are properly excludable from a parent's net monthly income. Conversely stated, the trial court must include any voluntary contributions that a parent makes to his/her retirement plan as income for support purposes.

¶ 19 We find additional support for this conclusion in our legislature's definition of the income available for support purposes. See 42 Pa.C.S.A. § 4302. Specifically, this section broadly states that "all forms of retirement" and "pensions" constitute income. Id. Moreover, other state courts have determined that an employee's voluntary contributions to a retirement plan are properly included as income in a support determination. For example, in *Frazer v. Frazer*, 23 Va.App. 358, 477 S.E.2d 290 (1996), the Virginia Court of Appeals determined that 401(k) contributions represent actual earnings that are voluntarily set aside for the future benefit of the employee. Thus, this court held that such contributions should be included in the employee's gross income for the calculation of child support. *Accord Nelson v. Nelson*, 651 So.2d 1252, 1253–54 (Fla.Dist. Ct.App.1995) (no deduction from gross income allowed for party's voluntary contributions to retirement account); *Lebrato v. Lebrato*, 3 Neb.App. 505, 529 N.W.2d 90, 98–99 (1995) ("The guidelines do not allow a deduction for contributions to voluntary retirement plans in arriving at net income....")

¶ 20 In light of the clear import of Pa. R.C.P.1910.16–5, the broad language of section 4302, and the persuasive authority of the aforementioned cases, we find that an employee's contributions to his 401(k) constitute income for support purposes. Nonetheless, in the instant case, we are unable to determine from the record whether the trial court included these contributions as income when it calculated Husband's support obligation. Therefore, we must remand this case to the trial court to determine whether these contributions were included. If the trial court finds that they were not, the trial court must recalculate Husband's support obligation.

¶ 21 Next, Wife asks this Court to determine whether the trial court abused its discretion in failing to include the employer's matching contributions to Husband's 401(k) plan as income for support pur-

poses. In her brief, Wife cites no Pennsylvania case law that supports this proposition, nor does our search reveal such a case.

¶ 22 We find, however, that two decisions of the Supreme Court of North Dakota provide guidance on this issue. In *Shipley v. Shipley*, 509 N.W.2d 49 (N.D. 1993), the high court determined that an employer's contributions to an employee's pension plan were properly included as part of an employee's gross income since these funds constituted "income from any source" under North Dakota's statutory definition of gross income. *Id.* at 53. Moreover, this same court determined in *Shaver v. Kopp*, 545 N.W.2d 170, 175 (N.D. 1996) that an employer's contribution to a tax-deferred savings plan qualified as gross income under the guidelines because the employee was able to "withdraw his employer's contributions, as well as his own, at any time, subject to taxes and penalties." *Id.* at 175. The court explained that this determination was proper since "children cannot wait for support, . . . [and] obligors should not be allowed the option of deferring income until the child reaches adulthood and no support obligation remains." *Id.*

¶ 23 Upon our consideration of our own statutory definition of income, we also find that an employer's contribution to an employee's retirement plan could constitute income as defined in section 4302. An employer's contribution would constitute "any form of payment . . . collectible by an individual regardless of source" if the employee could access his employer's contributions (regardless of penalties) at the time of the support calculation. Indeed, such a determination would need to be made by the trial court on a case-by-case basis. For if an employee/parent is entitled to any portion of these funds at the time of the support calculation, his/her children should presently reap the benefit of the investment.[2]

¶ 24 Additionally, if we were to determine that an employer's matching contributions are not income, it would be possible for an employee to enter into an agreement with his employer to take less wages in exchange for a heightened matching contribution. This would effectively permit an employee to shield his income in an effort to reduce his child support obligation.

¶ 25 In light of the foregoing analysis, we must remand this case to the lower court for the determination of whether Husband possesses the present ability to access his employer's contributions to his 401(k) plan. If the trial court determines that he has such access, employer's contributions, less the penalty incurred for withdrawal, shall constitute additional income for purposes of the child support calculation.

¶ 26 In her fourth and fifth issues, Wife argues that the trial court's calculations of the parties' net monthly incomes and support obligations are necessarily incorrect due to the errors alleged in Wife's first three issues. Appellant's Brief, at 23–7. We need not address these claims in light of our foregoing conclusion that remand is appropriate.

¶ 27 In his first issue on cross-appeal, Husband maintains that the trial court

---

2. We note that it is not determinative in the instant case that contributions to a 401(k) are not taxable as income at the time of the contribution. It is well settled that taxable income is not the same as net income for support purposes. *See Darby v. Darby*, 455 Pa.Super. 63, 686 A.2d 1346, 1349 (1996), *appeal denied*, 548 Pa. 670, 698 A.2d 594 (1997). This is so because tax law contains many preferences that have no relationship to the parties' support obligation. *Id.*

erred in failing to allocate one of the child dependency exemptions for federal income tax purposes to Husband. Cross–Appellant's Brief, at 12. Husband contends that the trial court intended to cede the exemption to him since the trial court deducted two personal exemptions (one for Husband and one for a child) from Husband's gross income when it determined Husband's support obligation. *Id.* In contrast, Wife argues that the trial court did not wish to allocate the exemption to Husband since it deducted three personal exemptions (one for Wife and two for the children) from her gross income. Cross–Appellee's Brief, at 3.

¶ 28 A panel of our Court has recently decided that trial courts "may use their equitable powers to allocate the dependency exemption to the non-custodial parent." *Piso v. Piso,* 761 A.2d 1215, 1218 (Pa.Super.2000). *Accord Miller v. Miller,* 744 A.2d 778, 786 (Pa.Super.1999). A non-custodial parent is entitled to the dependency exemption if the custodial parent signs a written declaration that the custodial parent will not claim the exemption and if the non-custodial parent attaches the written declaration to his/her return. *Id.* (citing 26 U.S.C.A. § 152(e)(2)). In this Commonwealth, trial courts have the power to order a custodial parent to execute the waiver at issue. *Id.* "Such an allocation is one method, among many, to effectuate economic justice for the parties and the children." *Piso,* at 1219.

¶ 29 As a preliminary matter, we note that it was impermissible for both Husband and Wife to take a personal deduction for the same child. Section 151(d)(2) of the Internal Revenue Code provides:

**Exemption amount disallowed in case of certain dependents.**—In the case of an individual with respect to whom a deduction under this section is allowable to another taxpayer for a taxable year beginning in the calendar year in which the individual's taxable year begins, the exemption amount applicable to such individual for such individual's taxable year shall be zero.

26 U.S.C.A. 152(d)(2). As each of the parties' claimed their son as a dependent on each of their tax returns, they are in violation of the aforementioned section. As such, the trial court erred in its calculation of the parties' income for support purposes in both 2000 and 2001 as it permitted each of the parties' to claim their son as a dependent.

¶ 30 In light of this discrepancy, we are unable to determine from the record whether the trial court intended to allocate one of the dependency exemptions to Husband. Therefore, we must remand this case to the trial court so that it may determine whether such an allocation is appropriate. If the trial court determines that it intended to allocate the exemption to Husband, it should order Wife to execute the necessary waiver. *Piso,* 761 A.2d at 1220. In any case, the trial court must recalculate the parties' net monthly income and support obligations once it determines which of the two parents may take the deduction.

¶ 31 In his second issue, Husband argues that the trial court abused its discretion when it did not order Wife to reimburse Husband for his spousal support payments in a lump sum. Cross–Appellant's Brief, at 14. If Wife is permitted to reimburse Husband over a two-year period, rather than in a single payment, Husband argues that Wife is unfairly receiving an interest-free loan. *Id.* Upon our review, however, we do not find that the trial court abused its discretion.

¶ 32 In the instant case, Wife filed a spousal support claim, and Husband made spousal support payments to Wife under a

temporary order for seven months. At the July hearing, however, Wife admitted that she was not entitled to these spousal support payments because she had been living with another man over the seven-month period. In light of this revelation, the trial court encouraged Wife to withdraw her request for spousal support and ordered that Husband receive a $200.00 credit each month on his child support payment until the full amount had been repaid. Husband now argues that the trial court should have ordered that Wife repay Husband in a lump sum.

¶ 33 As a threshold matter, we note that we do not have jurisdiction to entertain an appeal from an order of spousal support until a divorce is final. *See Leister v. Leister*, 453 Pa.Super. 576, 684 A.2d 192 (1996) (*en banc*) (an appeal from an order of spousal support prior to a divorce decree is interlocutory). In the instant case, however, Husband appeals from an order of child support that adjusted his child support obligation to reflect the amount Wife owes him for wrongfully accepting spousal support. As we may entertain an appeal from the order of child support prior to the entry of the parties' divorce and as Wife has withdrawn her request for spousal support, we believe that it is proper to address the instant claim. *See Hrinkevich v. Hrinkevich*, 450 Pa.Super. 405, 676 A.2d 237 (1996) (child support orders are appealable before the entry of a divorce decree even though spousal support orders are not).

¶ 34 At the outset, we note that Husband fails to cite any legal authority that supports his argument. Nevertheless, we observe that the trial court's allocation of a credit to correct Husband's overpayment of his support obligation may be likened to a trial court's efforts to allocate a party's underpayment or non-payment of a support obligation. Traditional-ly, courts of this Commonwealth have been given broad discretionary power to remit accrued support arrearages. *Kessler v. Helmick*, 449 Pa.Super. 113, 672 A.2d 1380, 1384 (1996). Moreover, in *Kessler*, we determined that the trial court did not abuse its discretion when it ordered a party to pay his support arrearages in installments, rather than a lump sum. *Id.* at 1385. In light of the discretion afforded to trial courts to remedy a party's underpayments, we do not find that the trial court abused its discretion when it remedied Husband's overpayment with a monthly credit.

¶ 35 In his third issue, Husband contends that the trial court abused its discretion when it did not permit Husband to make direct payments to the children's child care provider for his portion of the child care expenses. Cross Appellant's Brief, at 16. Husband argues that a direct payment plan would be advantageous since Wife failed to provide the court with an accurate statement of the cost of the children's daycare. *Id.*

¶ 36 Pursuant to Pa.R.Civ.P.1910.16–6(a), reasonable child care expenses are the responsibility of both the custodial and non-custodial parent. Accordingly, the trial court must allocate these expenses between the parties "in proportion to their net incomes and obligor's share added to his or her support obligation." *Id.* In the instant case, the trial court determined that the children incurred reasonable day care expenses in the amount of $1188.00 per month in 2000. N.T., Support Hearing, 6/13/01 at Exhibit P–11. To ascertain the children's child care expenses for calendar year 2001, the trial court annualized the expenses incurred in the first five months of 2001 and determined that the parties would spend approximately $1308.00 per month in child care in 2001. N.T. Support Hearing, 6/13/01 at Exhibit P–12; Trial Court Opinion, 7/10/01 at 9.

Upon our own review, we do not find that the trial court erred in this calculation.

¶ 37 Husband argues, however, that the statement reflecting the parties child care expenses from January to June of 2001 (Exhibit P–12) does not accurately reflect the expense parties will incur in the second half of the year. Husband testified that the child care rates will decrease in the latter half of the year because the parties' eldest child will become a full time student in September of 2001, and the parties would only have one child in day care. In response, Wife testified that the rates will not change dramatically because the parties will lose the discount afforded to those families who enroll two or more children. After considering this evidence, the trial court stated in its opinion that it would not reduce the parties' child care expenses because Husband "submitted no proof of the occurrence or amount of any such reduction." Trial Court Opinion, 7/1/01 at 13. As such, we do not find that the trial court abused its discretion when it ascertained the amount of the parties' child care expenses or when it ordered Husband to remit these payments to Wife.[3]

¶ 38 Order reversed and remanded for a determination of whether (1) the trial court included Husband's contributions to his 401(k) plan in its calculation of Husband's net income, (2) Husband may presently access his employer's matching contribution to his 401(k), and (3) the trial court intended to allocate a child dependency exemption to Husband.

¶ 39 Order reversed and remanded with instructions. Jurisdiction relinquished.

---

**3.** We note that Husband is free to petition the trial court to modify his child support obligation if he determines that the current child care expenses are not commensurate with his current obligation.