J-A19036-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| KRYSTAL G. SCHULTZ | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAMIAN C. SCHULTZ | : | |
| | : | |
| Appellant | : | No. 848 WDA 2024 |

Appeal from the Order Entered June 28, 2024
In the Court of Common Pleas of Butler County Domestic Relations at
No(s): 42408,
PACSES 015301591

BEFORE: BOWES, J., STABILE, J., and BENDER, P.J.E.

MEMORANDUM BY BOWES, J.:           **FILED: November 12, 2025**

Damian C. Schultz ("Husband") appeals from the June 28, 2024 order directing him to pay support and arrears to Krystal G. Schultz ("Wife") for the care of their minor child, C.S., born in September 2018. We affirm, but remand with instructions to clarify the health insurance portion of the order.

Husband and Wife married in May 2003, separated by March 16, 2022, and finalized their divorce by decree on June 20, 2024. In light of two nuptial agreements, the parties waived any right to seek spousal support, alimony *pendente lite* ("APL"), or alimony. As for child support, Husband filed a complaint against himself on July 8, 2022:

> At the support conference held August 16, 2022, [Husband] agreed to pay [Wife] $250.00 per month [in] child support. The parties also agreed [Wife] could continue residing in the marital residence [in Valencia] with [Husband] continuing to pay the monthly mortgage and the utility bills associated with the marital

residence. In addition, the support conference was continued and rescheduled to November 10, 2022.

Trial Court Opinion, 6/28/24, at 2 (cleaned up). In the meantime, Husband's complaint was consolidated with Wife's reverse-captioned child support case.

On November 18, 2022, the court entered an order setting Husband's child support obligation at $1,050.00 per month, which included $958.00 in support and $92.00 for arrears. Husband filed a motion to stay its enforcement. In an order dated April 28, 2023,[1] Husband's motion "was denied because he had not made any child support payments to [Wife]. However, [Husband] received a credit of $3,155.69 against his arrears in consideration for paying certain monthly expenses in lieu of paying [Wife] cash support." *Id*. at 3 (cleaned up). Thereafter,

[Husband] filed a timely request for [a] hearing *de novo* at both cases. Testimony was received on May 19, September 11, November 13, and December 1, 2023, and concluded on January 3, 2024. Both parties testified, along with [Husband]'s father Emil Schultz, Jr., Keith McCaw, CPA, and [Husband]'s office bookkeeper, Sara Blatt. On February 15, 2024, counsel for each party filed very detailed proposed findings of fact and conclusions of law.

*Id*. at 2-3 (cleaned up).

Notably, during much of the early separation, Husband and Wife shared equal physical custody of C.S. However, following Wife's relocation to Altoona, and pursuant to a custody order in January 2024, Wife assumed primary

_____

[1] Although Husband also purported to appeal from this order, all the issues pertain to the final June 2024 order, and therefore the propriety of an appeal from this order is not before this Court.

- 2 -

physical custody during the school year, whereas Husband was granted more custodial time in the summer via a two-week-one-week rotating schedule.[2]

After the support trial, the court made the following findings pertaining to income. Wife is employed as a full-time neuropsychologist. Her income has increased since her date of hire in November 2022. Therefore, the court identified three distinct periods of gross income for Wife, with the highest being $118,950.00 for the period beginning November 5, 2023, and continuing to date. Additionally, it accounted for Wife's annual discretionary incentive bonus which, in 2023, was $1,900.00. Wife has no other sources of income.

The evidence surrounding Husband's income was significantly less straightforward. He is self-employed and is the sole shareholder of three businesses related to installing, selling, and maintaining commercial HVAC systems. Husband used different accountants for filing his income taxes in 2020, 2021, and 2022. As explained by the court:

> The business losses reported on each Subchapter S Corporation Federal Return decreased each year, while each of these business[es'] gross receipts increased. [Husband] claims each business did not perform well in 2022 and all of them continue to underperform, due to an apparent poor business climate. His assertion is self-serving, not credible, and not validated by corroborating evidence, despite his bookkeeper of [sixteen] years, Ms. Blatt, echoing her boss'[s] belief. She trusts what [Husband] tells her regarding the business finances. Her testimony is rooted in bias. In addition, [Husband] is unable to generally explain the

---

[2] Husband's appeal in the custody matter was docketed in this Court at 108 WDA 2025.

most basic components of the business income tax returns, especially while testifying under cross-examination. He was evasive, unresponsive, and lacked credibility, when answering the questions posed to him by [Wife]'s counsel. [Husband] failed to offer any testimony or documentation evidencing the profits or losses for any of the three businesses he controls.

*Id*. at 4-5 (cleaned up). Turning to his individual taxes, the court assessed that Husband "voluntarily reduced his earned income paid to him by" two of his companies following the parties' separation in 2022, either "to avoid paying child support or reduce his support obligation and attempt to bolster his claim to receive child support from [Wife]." *Id*. at 5.

Husband operates his businesses on a single piece of real property, which he owned individually and sold in September 2023 for net proceeds of $868,208.00. His businesses continue to operate there pursuant to a two-year free lease agreement. Husband "applied these sale proceeds to re-pay two legitimate bank loans and four questionable undocumented loans." *Id*. at 5-6 (cleaned up). Before selling the property, one of his businesses, Schultz Installation, paid the monthly mortgage and real estate taxes on his behalf.

In anticipation of the termination of the two-year lease, Husband purchased real property across the road from the property he sold, though he offered little evidence to support the funding to do so. The court observed that although he acquired a legitimate mortgage loan of $150,000.00, he also purportedly borrowed, without appropriate documentation, $205,000.00 from his businesses and $120,000.00 cash from a friend. Husband also bought camp real estate in July 2023, in the amount of $50,000.00, using $45,000.00 cash borrowed from the same friend, though it was unclear whether that

private funding constituted a lien requiring repayment or should be considered income.

Husband had a personal credit card that Ms. Blatt asserted was a business account. Schultz Installation paid the monthly balance in 2022 and 2023. The statements reflect personal purchases, such as Prime Video, Amazon Kids, Discovery Plus, counsel fees, boat equipment, and a bounce house, as well as expenses at Quest Diagnostics and Soberlink stemming from the custody litigation. The court deemed "unrealistic and simply not credible" Husband's testimony that all of the credit card charges, including these highlighted ones, were business related. *Id*. at 8.

The court calculated the costs Wife incurred for childcare and C.S.'s health insurance. Husband had also claimed childcare expenses, but the court discredited his payments to his girlfriend as "fictionalized" because he only began paying her after the rescheduled support conference in November 2022, despite her providing unpaid childcare during the previous years of their relationship, and she did not report the new payments as income. *Id*. at 11. The court did not opine upon Husband's expenses for sending C.S. to a Pre-K program for three months in 2023.

The court was ultimately stymied by Husband's lack of transparency surrounding his financial situation and found his testimony to be an incredible attempt to avoid paying child support. To emphasize the obscurity of Husband's finances, it described the calculation of his monthly income as "like searching for a needle in a haystack." Trial Court Opinion, 6/28/24, at 11. It

elaborated that its attempts at discerning Husband's child support obligation was "the equivalent of attending a county farm show and throwing a dart at a wall of balloons because the operation of each business owned by [Husband] is so interwoven with his individual finances, as if to create an unsolvable labyrinth." *Id*. at 12.

Ultimately, based upon the evidence and testimony presented, the court determined that as of November 2023, Wife's average net monthly income was $7,065.47, whereas Husband's was $15,000.00. It utilized three different periods from November 7, 2022 to June 28, 2024, corresponding to Wife's salary increases, to calculate the parties' respective support obligations. Balancing those periods, the court ordered Husband to pay $1,507.00 per month in child support and $105.00 per month for arrears. It set the effective date of the order as November 7, 2022, as that was when Wife began her employment. The court accompanied the order with an opinion explaining its findings.

This appeal followed. Husband complied with the court's order to file a Pa.R.A.P. 1925(b) concise statement. The trial court authored a statement pursuant to Rule 1925(a), incorporating its June 28, 2024 opinion, expanding upon some of its reasoning, and reaffirming its credibility determinations. Husband submitted a brief thereafter,[3] presenting a multitude of issues for us to consider:

---

[3] Since the court's statement was filed the same day as Husband's initial brief, we issued a new briefing schedule to allow the parties to respond.

- 6 -

I. Whether the trial court erred and abused its discretion in calculating [Husband]'s disposable net monthly income.

II. Whether the trial court erred and abused its discretion in calculating [Wife]'s disposable net monthly income.

III. Whether the trial court erred and abused its discretion when it failed to grant [Husband] a reduction in child support for shared time from August 23, 2022[,] through January 4, 2024, despite the court's findings that the parties exercised equally shared physical custody during said timeframe.

IV. Whether the trial court erred and abused its discretion when it failed to award support back to the original date of filing of July 8, 2022[,] and to provide credit for all direct cash support payments and overpayments made by [Husband] during said timeframe, including, *inter alia*, pursuant to the agreement entered within the August 17, 2022 order of court.

V. Whether the trial court erred in finding that [Husband] cross[-]filed a complaint for child support and [APL] on August 30, 2022, in that [Husband] never filed any action for APL, the same being excluded by the terms of a prenuptial agreement.[4]

VI. Whether the trial court erred in assessing [Husband]'s proportional share and percentage of responsibility for reimbursed childcare expenses and other unreimbursed expenses, such as health care premiums.

VII. Whether the trial court erred in failing to provide [Husband] a credit toward his payment of health insurance premiums for the child when he was, and remains, court ordered to provide the health insurance; and whether the trial court erred in requiring [Husband] to pay a proportional share of the supplemental health insurance premium obtained by [Wife] without prior notice or consent.

---

[4] The trial court acknowledged in its Rule 1925(a) statement that APL is not at issue in this case, and therefore we deem any reference to APL in the narrative of the history of the case in the court's June 28, 2024 opinion to be a mistake and without need for further discussion, as it did not impact its analysis.

VIII. Whether the trial court erred in finding [Husband] fictionalized his childcare expenses when he was away from the child at work.

Husband's brief at 24-25 (cleaned up).[5]

The following principles govern our review of Husband's appeal:

We review support orders for abuse of discretion. We cannot reverse the trial court's support determination unless it is unsustainable on any valid ground. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record. The principal goal in child support matters is to serve the best interests of the children through the provision of reasonable expenses.

*Mazzarese v. Mazzarese*, 319 A.3d 586, 590 (Pa.Super. 2024) (cleaned up).

"Child . . . support shall be awarded pursuant to statewide guidelines. In determining the ability of an obligor to provide support, the guidelines place primary emphasis on the net incomes and earning capacities of the parties."

*Mackay v. Mackay*, 984 A.2d 529, 537 (Pa.Super. 2009) (cleaned up).

Husband primarily challenges the computation of his and Wife's incomes. The Rules of Civil Procedure provide a non-exhaustive list of sources of income:

(1) wages, salaries, bonuses, fees, and commissions;

(2) net income from business or dealings in property;

---

[5] In the argument section of his brief, Husband expands the first issue into ten purported errors and the second into two. *See* Husband's brief at 31-79. The remaining six issues, including headings, comprise a total of only eight pages of argument.

(3) interest, rents, royalties, and dividends;

(4) pensions and all forms of retirement;

(5) income from an interest in an estate or trust;

(6) Social Security disability benefits, Social Security retirement benefits, temporary and permanent disability benefits, workers' compensation, and unemployment compensation;

(7) alimony if, in the trier-of-fact's discretion, inclusion of part or all of it is appropriate; and

(8) other entitlements to money or lump sum awards, without regard to source, including:

> (i) lottery winnings;
>
> (ii) income tax refunds;
>
> (iii) insurance compensation or settlements;
>
> (iv) awards and verdicts; and
>
> (v) payments due to and collectible by an individual regardless of source.

Pa.R.Civ.P. 1910.16-2(a).

The bulk of Husband's brief attacks the court's credibility determinations as it bears upon the calculation of the monthly net incomes. He takes issue with the fact that the court, in assessing his income, "stated that it did nothing more than throw a dart at a carnival balloon wall[.]" Husband's brief at 31. He further assails the court for either failing to employ a formula in reaching the $15,000.00 figure, or improperly relying upon what he claims was a miscalculation in Wife's proposed findings of fact and conclusions of law. *Id*. at 31-32. Husband laments that opposing counsel asked him financial

questions instead of posing those to his office manager or accountant, and explained that his income increased temporarily due to one large job and government payroll loans during the COVID-19 pandemic. *Id*. at 53-58. He counters that his monthly net income should be lessened to $3,678.00 per month, and Wife's increased to $8,476.00. *Id*. at 47, 76. Furthermore, Husband contends that the court erred in neglecting to consider Wife's alleged decision to hide her income figures until on the stand. *Id*. at 80.

In the end, Husband proffers the following support calculations, split into five periods. First, he avers that he should owe Wife $438.00 per month in child support from July 8 to August 23, 2022, and $331.00 per month from January 9, 2024 to the present. Then, Wife should owe him $840.00 per month in child support from August 24, 2022 to February 10, 2023; $1,022.39 from February 11 to April 22, 2023; and $1,301.00 from April 23, 2023 to January 8, 2024. *Id*. at 92.

To start, it is plain to us that the trial court did not estimate Husband's net monthly income at $15,000.00 by throwing a dart, either in reality or metaphorically, at a wall of numbered balloons. The court utilized that imagery not to describe the way it reached that number, but to highlight the obscurity of Husband's testimony and evidence, and to emphasize the difficulty of calculating his income with absolute certainty. As it explained: "The analogy set forth in the opinion is perhaps a poor attempt at humor, but it best describes the uncertainties and lack of continuity throughout [Husband]'s direct testimony[.]" Trial Court Opinion, 11/8/24, at 3.

Given this background, the court deemed it appropriate to look at Husband's businesses in calculating his support obligation:

[Husband]'s case-in-chief presents a buffet of excessive documentary and testimonial evidence in a failed effort to conceal the egregious extent he utilizes business funds to pay for personal expenses. The already murky water of determining [Husband]'s average net monthly income for child support purposes becomes further muddied by his cavalier abuse of the financial protections afforded the three S-Corporation business entities he controls. Piercing the corporate veil of each of [his] three S-Corporation[s] is warranted to determine his available income available to pay child support.

. . . [Husband] clearly utilizes the financial resources of his three businesses for his personal benefit. Limiting his income for determining child support to the earned income set forth annually on Form W-2, as [he] argues, is inconsistent with, and contrary to the credible evidence and the underpinnings of the Support Guidelines.

*Id*. at 8-9 (cleaned up).

We have held that "[w]hen actual, net earnings do not reflect earning capacity, the trial court should investigate a variety of sources to determine a party's true wealth." **Heisey v. Heisey**, 633 A.2d 211, 213 (Pa.Super. 1993) (cleaned up). To do so, "the court should pierce the corporate veil to determine if a spouse's ability to pay support is enhanced by advantages owing to ownership or membership in a corporation." **Id**. (cleaned up).

Here, the evidence supported the court's decision to look at the benefits Husband enjoyed from his businesses in calculating his income. Although it did not spell out how it assessed the $15,000.00 figure, we can deduce that it credited Wife's detailed calculations from her proposed findings of fact and

conclusions of law, and the record supports the court's credibility determinations and findings. As such, we discern no abuse of its discretion in how the court set the parties' respective incomes.

Turning to his remaining claims, Husband first argues, via a single paragraph, that the court erred in failing to grant him credit for the times he and Wife equally shared custody. *See* Husband's brief at 81. We consider this, and the subsequent claims, with the following, additional principles in mind:

> As with the other elements of child support, a parent may receive credit against his or her support obligation only for those expenditures which actually satisfy the obligation of reasonable and necessary support; a parent should receive no credit for making voluntary payments for those "extras" which do not constitute support in the first place. The obligor has the burden to establish he is entitled to the claimed credits.

*Spahr v. Spahr*, 869 A.2d 548, 555 (Pa.Super. 2005) (cleaned up).

As noted, based upon when Wife's income increased, the trial court delineated three periods for purposes of calculating support awards from its effective date in November 2022, to the present. In the first two periods, which spanned from November 2022 to November 2023, the court specifically afforded Husband offsets for exercising shared custody. *See* Order of Court, 6/28/24, at 3. We recognize that Husband did not explicitly receive credit for the remaining two months of shared custody that fell within the third period. However, in light of the manner in which the court fashioned the awards, we do not deem this decision to rise to the level of an abuse of discretion. *See*

*Mazzarese*, 319 A.3d at 590 ("An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record." (cleaned up)); *accord Portugal v. Portugal*, 798 A.2d 246, 255 (Pa.Super. 2002) (concluding that the trial court did not abuse its discretion when it remedied the husband's overpayment with a monthly credit instead of a lump sum because "courts of this Commonwealth have been given broad discretionary power to remit accrued support arrearages" in the manner the trial court deems most fit (cleaned up)).

Next, Husband complains that he should have received a $12,017.00 credit for paying: (1) mortgage, taxes, insurance, and utilities for the marital residence prior to November 2022; (2) Wife's cell service from July 2022 to May 2023; (3) insurance on the company vehicle Wife was permitted to use via court order from July 2022 to June 2023; (4) child support in July 2022; and (5) credit card purchases by Wife on Husband's personal cards in July and August 2022. *See* Husband's brief at 81-84. He requested this credit in November 2022, and again within his proposed findings of fact and conclusions of law following the support trial.

In the April 2023 order, the court considered his initial request and concluded that Husband was entitled to $3,155.69 credit for certain payments made between September 1 and November 7, 2022. In weighing Husband's motion to be reimbursed for payments related to the house, vehicle, phone,

- 13 -

and credit card, the court noted that the initial support order, dated August 17, 2022, with an effective date of September 1, 2022, indicated that the parties agreed Wife would continue to reside in the marital residence with Husband paying for the mortgage and utilities until further review at the upcoming conference. It did not, however, provide for Husband to receive a credit for those payments dating back to July 2022. Accordingly, the court set the pertinent period for house credits from September 1, 2022, to November 7, 2022, when Mother began the process of moving to Altoona. Additionally, the court deemed Husband's itemization of the sought-after expenses inaccurate, and instead relied upon the exhibits in crafting the credit towards his arrears for September 2022 to April 2023. *See* Order of Court, 5/2/23, at 3.

Our review confirms that the court adequately addressed Husband's request for credit in the April order. In making the second request following the support trial, Husband failed to adduce additional evidence to establish his entitlement to that credit. Therefore, we find no abuse of discretion in the court's decision not to issue the credit in its final support order.

In the penultimate issue we consider, Husband questions his obligation to pay for medical insurance for C.S. and the court's failure to grant him a credit for obtaining said insurance. *See* Husband's brief at 85-88. The trial court contends that it terminated Husband's obligation to maintain medical insurance per the June 28, 2024 order. *See* Trial Court Opinion, 11/8/24, at 8.

In pertinent part, the Rules provide:

**(b) Health Insurance Premium.**

(1) The trier-of-fact shall allocate the health insurance premium paid by the parties, including the premium attributable to the party paying the premium, provided that a statutory duty of support is owed to the party or child covered by the health insurance.

> (i) If the party paying the health insurance premium is the obligor, the obligee's share is deducted from the obligor's basic support obligation.

> (ii) If the obligee is paying the health insurance premium, the obligor's share is added to the obligor's basic support obligation.

Pa.R.Civ.P. 1910.16-6.

Upon review, we agree with the trial court that the June 2024 order indicates that "[Wife] maintains the health insurance[,]" thereby implicitly cancelling Husband's obligation. *See* Order of Court, 6/28/24, at 3. However, notwithstanding the court's intention, the order also holds "[Husband] responsible for providing medical coverage[.]" *Id*. at 2. In its Rule 1925(a) statement, the court relied upon its pronouncement in the June order that "[Husband]'s obligation to maintain medical insurance and/or pay a proportional share of unreimbursed medical expenses also terminate[s] with the current support obligation" as further evidence that it terminated his insurance obligation. *Id*. at 3. When read in context, though, it merely provides that Husband's obligation to maintain health insurance for C.S. would stop at the same time as his support obligations, notwithstanding the owing

of any outstanding arrears. It did not mean that the responsibility to maintain insurance ended at the time of the order. Thus, the order did not unequivocally direct Husband to cancel C.S.'s insurance, and he may be entitled to credit for payments made in reliance thereon.

Given this lack of clarity, we are compelled to remand this matter with directions to the trial court to determine: (1) who is responsible for maintaining medical insurance for C.S.; (2) how that decision affects the support obligations pursuant to Rule 1910.16-6(b)(1); and (3) whether Husband or Wife is due any credit or reimbursement for past payments.

Finally, Husband summarily challenges the court's characterization of his childcare costs as being fictionalized, in specific reference to C.S.'s enrollment in a Pre-K program between September and November 2023. **See** Husband's brief at 88. Critically, the court's opinion accompanying its support order did not discuss the Pre-K program costs. Instead, it only opined that his payments to his girlfriend were fictionalized childcare costs. In his Rule 1925(b) statement, Husband did not explicitly state that the court failed to credit him for the Pre-K expenses. Instead, he only generally referenced the court's consideration of "childcare expenses when he was away from the child at work[,]" which the court interpreted as referring to the payments Husband made to his girlfriend and that it had discredited as disingenuous in its support ruling. **See** Trial Court Opinion, 11/8/24, at 8.

Husband never put the trial court on notice that he was challenging its failure to consider the Pre-K program expenses. Therefore, we conclude that

he has waived that issue. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

Based upon the foregoing, we affirm the child support order, but remand for the trial court to enter an order clarifying its directive surrounding health insurance for C.S. and whether any party is entitled to credit in that regard.

Order affirmed. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 11/12/2025