J-S72045-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| C.L.W., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| R.J.W., JR., | : | |
| | : | |
| Appellant | : | No. 365 MDA 2016 |

Appeal from the Order Entered February 5, 2016,
in the Court of Common Pleas of York County,
Civil Division at No(s): 1347-SA-2004

BEFORE:  GANTMAN, P.J., DUBOW, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED DECEMBER 06, 2016**

R.J.W., Jr. (Father) appeals from the order of February 5, 2016, which, *inter alia*, modified Father's child support obligation. Upon review, we vacate the order of the trial court and remand for proceedings consistent with this memorandum.

Father and C.L.W. (Mother) are formerly husband and wife and are the parents of two children, Daughter, age 17, and Son, age 15.  Mother has primary physical custody of Son and Father has primary physical custody of Daughter.[1]  The parties have been litigating support obligations since 2004, and the most recent filing is Mother's petition filed on August 5, 2015, for amendment of support order.  After a conference before Amanda Fritzius, a

---

[1] Both children resided with Mother until July 2014 when the parties reached an agreement that Daughter would live with Father.

*Retired Senior Judge assigned to the Superior Court.

domestic relations conference officer, Father's child support obligation increased from $900 per month to $1,675 per month. This obligation was based on an earning capacity of $350,000 per year for Father, who is a board certified general surgeon. Father filed a request for a *de novo* hearing.

Hearings were held on November 5 and December 16, 2015. Father testified about his medical practice in the prior years. He testified that he entered into a consent order with the state of Maryland regarding his license to practice medicine in 2011. Specifically, he agreed not to perform a specific gall bladder procedure in the future, and in January of 2013 he began a probationary period during which he claimed he was unable to obtain hospital privileges. However, he maintained employment at Surgical Associates Chartered located in southern Maryland, saw patients in the office, and his practice was limited to surgeries that could be performed in the office. N.T., 11/5/2015, at 24. Since at least January of 2013, Father claimed he was only able to earn $120,000 per year. He also testified that once his probationary period expired, in January of 2016, he believed he would be able to obtain hospital privileges and increase his salary. *Id*. at 27. Specifically, he testified that his "patient load should quadruple." *Id*.

Mother called Fritzius to testify on her behalf.[2] Fritzius testified about how she arrived at the earning capacity of $350,000 for Father. Specifically, she found "a salary from an internet web site stating what a trauma surgeon earns in the Washington, D.C. area." N.T., 12/16/2015, at 37. That website showed a median annual salary of $389,325. She testified that she "went to a couple of web sites regarding the salary of a general surgeon in that area, as well as took into consideration what [Father's] home was valued at."[3] *Id*. She also reviewed "some tax returns, W-2s, [and] conference notes from past conferences." *Id*. at 38.

When questioned about why she used salaries for a trauma surgeon when Father is a general surgeon, Fritzius testified that she "also pulled off general surgeons," but she "did not know what type of surgeon he actually was." *Id*. at 40. In addition, when questioned about Father's geographic area of practice, she testified that she "was under the impression [Father] practiced in the DC area but didn't necessarily live there, commuted there." *Id*. Moreover, she testified that she was unaware that Father's license to practice medicine was subject to restrictions. *Id*. at 39.

---

[2] It is potentially improper for a conference officer to testify on a party's behalf at a *de novo* hearing. **See** Pa.R.E. 605 ("The presiding judge may not testify as a witness at the trial **or other proceeding**.") (emphasis added).

[3] Father testified that his home was worth $795,000, but had been valued at $1,450,000 before he purchased it. N.T., 11/5/2015, at 42. He owes $972,000 on the mortgage.

At the close of the hearing, the trial court permitted both parties to file memoranda and proposed findings of fact. Mother filed a memorandum, but Father did not. On February 4, 2016, the trial court filed an order and opinion concluding that during Father's probationary period, his earning capacity is held to $120,000. However, "once Father's probation ends on January 31, 2016, he shall be held to an earning capacity of $350,000." Trial Court Opinion, 2/4/2016, at 7. Specifically, the trial court found that "grounds for modification existed as change in the needs of the child and the end of Father's probationary period presents a substantial change in circumstances that may modify the support order." *Id*. Father timely filed a notice of appeal, and both Father and the trial court complied with Pa.R.A.P. 1925.

On appeal, Father argues that the trial court erred in setting his earning capacity at $350,000 after January 2016. We set forth our well-settled standard of review and applicable principles of law with respect to a child support order.

> The amount of a support order is largely within the discretion of the trial court, whose judgment should not be disturbed on appeal absent a clear abuse of discretion. An abuse of discretion is not merely an error of judgment, but rather a misapplication of the law or an unreasonable exercise of judgment. A finding that the trial court abused its discretion must rest upon a showing by clear and convincing evidence, and the trial court will be upheld on any valid ground. For our purposes, an abuse of discretion requires proof of more than a mere error of judgment, but rather evidence that the law was misapplied or overridden, or that the judgment was manifestly unreasonable or based on bias, ill will, prejudice or partiality.

***Portugal v. Portugal***, 798 A.2d 246, 249-50 (Pa. Super. 2002) (internal quotation marks and citations omitted).

> [A] person's support obligation is determined primarily by the parties' actual financial resources and their earning capacit[ies]. Although a person's actual earnings usually reflect his earning capacity, where there is a divergence, the obligation is determined more by earning capacity than actual earnings. Earning capacity is defined as the amount that a person realistically could earn under the circumstances, considering his age, health, mental and physical condition, training, and earnings history.

***Woskob v. Woskob***, 843 A.2d 1247, 1251 (Pa. Super. 2004) (internal citations omitted).

Instantly, there is no dispute that Father's earnings during his probationary period do not reflect his actual earning capacity. Thus, the trial court had to undergo measures to make that determination. It is in this regard that Father argues the trial court erred. Specifically, he contends that the trial court erred in relying upon an internet search in reaching its conclusion. Father's Brief at 13. Father also argues that the trial court erred in utilizing earnings for surgeons in Washington, D.C., when he practices in Maryland. ***Id***. at 15. Finally, Father contends that the trial court erred "by holding [him] to earnings which he has never earned prior to or during his suspension/probation period." ***Id***. at 16.

The rule governing how a trial court should assess earning capacity provides the following.

In order for an earning capacity to be assessed, the trier of fact must state the reasons for the assessment in writing or on the record. Generally, the trier of fact should not impute an earning capacity that is greater than the amount the party would earn from one full-time position. Determination of what constitutes a reasonable work regimen depends upon all relevant circumstances including the choice of jobs available within a particular occupation, working hours, working conditions and whether a party has exerted substantial good faith efforts to find employment.

Pa.R.C.P. No. 1910.16-2(d)(4).

First, with respect to the trial court's use of an internet search to determine earning capacity, Father argues that this was error by relying on *Ney v. Ney*, 917 A.2d 863 (Pa. Super. 2007). In *Ney*, the father sought a modification of his child support obligation due to a reduction in his income. In concluding that the father was not entitled to a reduction, the trial court "*sua sponte* considered hearsay evidence not of record in assessing [the father's] credibility and determining his earning capacity." *Id*. at 866. Specifically, the trial court conducted an internet search of jobs in the area in determining the father's earning capacity. This Court held that this type of internet search, which led to reliance upon facts outside the record, constituted reversible error.

Instantly, Fritzius testified at the *de novo* hearing that she did the exact same thing in determining Father's earning capacity. She testified that she conducted an internet search of what surgeons earn in the Washington D.C. area. N.T., 12/16/2015, at 37. However, she also testified that when conducting her research, she did not know "what type of surgeon

[Father] actually was" and was not certain of where he practiced. *Id*. at 40. Thus, not only was the internet search conducted by Fritzius improper, the information she used in calculating Father's earning capacity was erroneous. Accordingly, we hold the trial court abused its discretion in relying on this information.

Moreover, Fritzius testified that Father's income prior to his 2013 suspension was $225,000. N.T., 12/16/2015, at 41. While past earnings are not necessarily predictive of future earning capacity, the record before us is devoid of any information that would show that Father's earning $225,000 was below what a surgeon would earn.

Based on the foregoing, we vacate the order of the trial court. Although the earning capacity the trial court set for Father may ultimately be shown to be appropriate, the trial court abused its discretion in making that finding based upon the evidence of record. Thus, we vacate the order of the trial court and remand for a new hearing at which both Mother and Father have the opportunity to present evidence of Father's earning capacity.

Order vacated.[4] Jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/6/2016

---

[4] In the interim, Father shall be held to the earning capacity of $225,000 after January 2016. To the extent that his earning capacity differs in a future order, the trial court shall credit payments going forward.