J-A07038-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| P.J., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| E.J., | : | |
| | : | |
| Appellant | : | |
| | : | No. 1455 WDA 2016 |

Appeal from the Order Entered August 31, 2016
in the Court of Common Pleas of Erie County,
Domestic Relations at No(s): 201600486/ PACES No. 292115871

BEFORE: OLSON, STABILE, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:                    **FILED JUNE 16, 2017**

E.J. (Father) appeals from the trial court's August 31, 2016 order establishing child support for his minor child J.J.  Upon review, we affirm in part, vacate in part, and remand for proceedings consistent with this memorandum.

The trial court summarized the pertinent background as follows:

On April 12, 2016, [P.J. (Mother)] filed a complaint for support requesting child support and spousal support.  Following a support conference, a May 11, 2016 interim order of court [was] issued setting Mother's monthly net income at $2,103.42, Father's monthly net income at $2,702.04 and establishing a monthly child support obligation of $670.11, plus arrears.  As provided in the May 11, 2016 summary of trier of fact, "[Father] was held at an earning capability as a self-employed roofer at $44,810.00/year based on the U.S. Bureau of Labor [] Statistics May 2014 Wage Estimates for Erie."  The summary further provides: "[Mother] was held at [an earning] capability of

---

* Retired Senior Judge assigned to the Superior Court.

$30,893.79/year based on the 2015 income." Father filed a demand for [a] court hearing.

T[he trial court], following an August 31, 2016 *de novo* hearing, issued its August 31, 2016 order making the May 11, 2016 interim order final.

Trial Court Opinion, 11/18/2016, at 1-2 (unnecessary capitalization omitted).

Father timely filed a notice of appeal from the August 31st order, and both Father and the trial court complied with Pa.R.A.P. 1925. He raises the following issues on appeal, which we have reordered for ease of disposition.

I.      Whether the [trial court] committed an error of law and/or abused its discretion in assessing [Mother] with an earning capacity based upon her 2015 income, where she worked less than the full year in 2015, she was terminated for cause in 2016, she testified as to the hourly rates she earned as a licensed nurse, and there was no competent evidence that [Mother] is unable to be employed in a full–time capacity.

II.     Whether the [trial court] committed an error of law and/or abused its discretion in assessing an earning capacity to [Father], as there was insufficient evidence to support the assessment of an earning capacity under the factors of Pa.R.C.P. 1910.16-2(d)(4) as well as to support the earning capacity assessed where [Father] has operated a roofing business for over fifteen years and provided evidence of his income for the previous six years.

III.    Whether the [trial court] committed an error of law and/or abused its discretion in failing to state the reasons for the assessment of an earning capacity to [Father] in writing or on the record in accordance with Pa.R.C.P. 1910.16-2(d)(4).

Father's Brief at 2 (suggested answers omitted).

We set forth our well-settled standard of review and applicable principles of law with respect to a support order.

> The amount of a support order is largely within the discretion of the trial court, whose judgment should not be disturbed on appeal absent a clear abuse of discretion. An abuse of discretion is not merely an error of judgment, but rather a misapplication of the law or an unreasonable exercise of judgment. A finding that the trial court abused its discretion must rest upon a showing by clear and convincing evidence, and the trial court will be upheld on any valid ground. For our purposes, an abuse of discretion requires proof of more than a mere error of judgment, but rather evidence that the law was misapplied or overridden, or that the judgment was manifestly unreasonable or based on bias, ill will, prejudice or partiality.

*Portugal v. Portugal*, 798 A.2d 246, 249-50 (Pa. Super. 2002) (internal quotation marks and citations omitted).

> [A] person's support obligation is determined primarily by the parties' actual financial resources and their earning capacit[ies]. Although a person's actual earnings usually reflect his earning capacity, where there is a divergence, the obligation is determined more by earning capacity than actual earnings. Earning capacity is defined as the amount that a person realistically could earn under the circumstances, considering his age, health, mental and physical condition, training, and earnings history.

*Woskob v. Woskob*, 843 A.2d 1247, 1251 (Pa. Super. 2004) (internal citations omitted).

We first address Father's claim that the trial court erred in assessing Mother's earning capacity. Specifically, Father avers that

> [t]he [trial court] appears to assess Mother with less than full-time earnings based on prior medical leaves and resulting lower earnings over the past three years. ... Mother's education, training, and work experience, that of a licensed, registered nurse for almost 20 years, along with the lack of evidence of any

- 3 -

current medical issue restricting Mother's ability to work full time, support an income assessment of a full-time licensed, registered nurse.

Father's Brief at 24. The trial court offered the following explanation to support its findings that Mother's earning capacity was assessed accurately using Mother's 2015 income.

> At the time of the parties' April 1, 2016 separation, Mother, who had worked as a licensed registered nurse for seventeen years, was unemployed. Mother was, on February 26, 2016, terminated from her position with UPMC Lake Erie Endocrinology. At that point, Mother and Father agreed that Mother would stay home and that she would not apply for unemployment compensation.
>
> Prior to her termination, Mother had a series of medical issues which impeded her ability to work and resulted in multiple medical leaves. In 2013, Mother sustained a work-related back injury and broken ankle, which resulted in a leave from work. When Mother returned to work, she was only able to work in a light duty capacity. After approximately one year of light duty work, a functional capacity evaluation revealed that Mother could no longer perform her job. As a result, Mother was transferred to a different, lower paying position. In 2015, Mother was off of work again due to a broken knee and torn ACL. Thereafter, a November of 2015 incident of domestic violence with Father resulted in injuries which necessitated an additional medical leave. The impact of Mother's continuing medical problems is reflected in her fluctuating income over the years.
>
> With regard to reduced or fluctuating income, the Support Guidelines provide:
>
>> (1) *Voluntary Reduction of Income*. When either party voluntarily assumes a lower paying job, quits a job, leaves employment, changes occupations or changes employment status to pursue an education, or is fired for cause, there generally will be no effect on the support obligation.

- 4 -

(2) *Involuntary Reduction of and Fluctuations in, Income.* No adjustments in support payments will be made for normal fluctuations in earnings. However, appropriate adjustments will be made for substantial continuing involuntary decreases in income, including but not limited to the result of illness, lay-off, termination, job elimination or some other employment situation over which the party has no control unless the trier of fact finds that such a reduction in income was willfully undertaken in an attempt to avoid or reduce the support obligation.

(4) *Earning Capacity.* Ordinarily, either party to a support action who willfully fails to obtain appropriate employment will be considered to have an income equal to the party's earning capacity. Age, education, training, health, work experience, earnings history and child care responsibilities are factors which shall be considered in determining earning capacity.

Pa.R.C.P. 1910.16-2(d).

Mother was terminated from her employment a short time after her return from medical leave, but just over a month prior to the parties' separation. While Mother disagrees that her termination was justified, there is documentation supporting that she was fired for cause. Meanwhile, parents have an obligation to support their unemancipated children. [**See**] 23 Pa.C.S.[] §4321. "Child support is a shared responsibility; both parents must contribute to the support of their child in accordance with their relative incomes and ability to pay." [**Depp v. Holland**], 636 A.2d 204, 206 (Pa. Super. 1994). The law is clear that, generally, there will be no effect on a parent's support obligation when that parent is fired for cause. [**See**] Pa.R.C.P. 1910.16-2(d)(1). In that regard, Mother's termination does not negate her support obligation to her child.

Nevertheless, Pennsylvania Courts have long held that "[a] person's earning capacity is defined not as an amount which the person could theoretically earn, but as that amount which the person could realistically earn under the circumstances, considering his or her age, health, mental and physical condition and training." [**Haselrag v. Haselrag**, 840 A.2d 338, 340 (Pa.

- 5 -

Super. 2003) (quoting **Strawn v Strawn**, 664 A.2d 129, 132 (Pa. Super. 1995))]. In determining Mother's earning capacity, the [trial court] is unable to ignore an involuntary aspect of flux and decrease in her earnings. Specifically, since 2013, Mother's medical issues have resulted in leave from work and fluctuations in her income. During that time, Mother also underwent a functional capacity evaluation which revealed that she could no longer perform her job and, accordingly, she was transferred to a different and lower paying position. In sum, Mother's medical issues have precluded her from working a full year during any of the last three years. In that regard, Mother's 2015 income, which is reduced due to medical leave, is realistic. In reality, the parties have not realized a full-time income from Mother in years and, had the family remained intact, no income would have been attributed to Mother due to the parties' agreement that she remain at home.

Trial Court Opinion, 11/18/2016, at 5-7 (some citations omitted).

After a thorough review of the record in this matter, we discern no error in the trial court's reasoning. As cited *supra*, Pa.R.C.P. 1910.16-2(d)(2) provides that "appropriate adjustments will be made for substantial continuing involuntary decreases in income, including but not limited to the result of illness[.]" In this case, the trial court considered testimony from both Father and Mother and determined, for the reasons it cited, that Mother's earning capacity had continually decreased due to medical issues which barred Mother from performing her job. Because the record supports the trial court's conclusions, we decline to disturb its finding.

Next, Father avers the trial court erred by relying on wage estimates published by the United States Bureau of Labor Statistics. By way of further background, after Mother filed a complaint in support, a conference was held and soon thereafter, an interim order was entered. Said order

- 6 -

recommended that Father pay monthly support in the amount of $670.11, plus arrears. **See** Conference Summary and Order, 5/11/2016. This obligation was calculated by computing Mother's earning capacity based on her 2015 income, and Father's earning capacity based on "the U.S. Bureau of Labor Statistics May 2014 Wage Estimate for Erie." **Id.** at 2.

> Father avers that
>
> [n]o copy of the U.S. Bureau of Labor Statistics May 2014 Wage Estimates for Erie was presented as evidence at the support conference. [] No evidence that Father had the opportunities to gross business income of $44,810.00 per year was offered at the conference. No explanation as to why Father was held at an earning capacity was offered in the conference Summary or May 11, 2016 Interim Order.

Father's Brief at 5. On May 23, 2016, Father filed a demand for a hearing, and on August 31, 2016, a *de novo* hearing was held. At the August 31st hearing, the Bureau of Labor Statistics document relied upon by the Conference Officer was not entered into evidence by either party. That same day, the trial court entered an order affirming the May 11, 2016 interim order.

Father contends that the Bureau of Labor Statistics document, which was not entered into evidence by either party, should not have been used to determine his earning capacity. Father's Brief at 15-16. In making this argument, Father cites **Ney v. Ney**, 917 A.2d 863 (Pa. Super. 2007). In **Ney**, the father sought a modification of his child support obligation due to a reduction in his income. In concluding that the father was not entitled to a

reduction, the trial court "*sua sponte* considered hearsay evidence not of record in assessing [the father's] credibility and determining his earning capacity." *Id*. at 866. Specifically, the trial court conducted an internet search of jobs in the area in determining the father's earning capacity. This Court held that this type of internet search, which led to reliance upon facts outside the record, constituted reversible error.

In its 1925(b) opinion, the trial court stated the following:

> Father, since 2000, has been the sole owner of his own construction business[.] By utilizing his Income Tax Returns, Father asserts that his income from his business is only around $15,000 to $16,000 per year. The [trial court] is not, however, constrained by Father's self-reported earnings on tax documents. [**See Labar v. Labar**], 731 A2d 1252, 1255 (Pa. 1999)(use of federally taxable income creates an "oft-time fictional financial picture" as the result of federal income tax laws); [**See also Commonwealth ex rel. Banks v. Banks**], 478 A.2d 1387, 1390 (Pa. Super. 1984)("[I]ncome tax returns are not infallible devices for measuring earning capacity, particularly where the income-earner is self-employed."). When looking beyond the self-reported earnings, Father is not credible.

> Father is living well outside the means of his reported income, indicating that he has much greater cash flow than his Income Tax Returns reveal. For example, in 2016, Father took and paid for a trip to Romania. Father was out of the country for a month. Mother testified that she and Father used to go on vacation all of the time and that trips like Father's to Romania averaged $10,000 to $15,000. Also this year, Father was able to make a $4,000 payment to Marquette in order to pay off the mortgage on the marital residence. Moreover, Father sent approximately $36,000 through PNC Bank during just two months in 2016. It is further noteworthy that, during the marriage, Father acquired at least six parcels of real estate. The [trial court] fails to see how Father's actions are feasible considering the meager earnings that he reports.[1]

[1] While Father's demeanor was not the sole basis for the [trial court's] credibility assessment, it is noteworthy that his demeanor changed and he was hesitant with his "no" response when questioned whether he performed work for people other than those for which he attached 1099s to his tax returns.

In sum, the [trial court] believes that Father has much greater income than he reports. As a result, the [trial court] is faced with the arduous task of formulating a support award, without actual income information. Unable to get a clear picture of Father's actual income, the [trial court] assessed Father with an earning capacity based upon the wage estimates for Erie of a self-employed roofer as published by the U.S. Bureau of Labor [] Statistics Such an assessment is consistent with the occupation Father has held for the past sixteen years and, considering the standard of living maintained by Father, is more realistic than his reported earnings.

Trial Court Opinion, 11/18/2016, at 3-5 (some citations omitted).

While we are cognizant that the trial court is well within its discretion to determine that Father is disingenuous with reporting his yearly income, based upon our decision in **Ney**, the trial court erred in adopting the Conference Officer's recommendations which were based upon facts outside the record. Furthermore, while the trial court is correct that it is not constrained to determine Father's earnings based solely on his tax returns, the court's determination must be made by utilizing record evidence introduced by the parties. **See Ney**, 917 A.2d at 863 ("A trial court may not consider evidence outside of the record in making its determination. Nor may this Court uphold a trial court's order on the basis of off-the-record facts.") (citations and quotations omitted).

Although the earnings set for Father ultimately may be shown to be appropriate, the trial court abused its discretion in accepting this finding based upon evidence that was not introduced by either party. Thus, we vacate the order of the trial court to the extent it relied upon facts outside the record when determining Father's income, affirm the trial court's order as it pertains to Mother's income, and remand for a new hearing to address only, Father's income and earning capacity.[1] At that time both Mother and Father will have the opportunity to present evidence of Father's earning capacity.

Order vacated in part, affirmed in part, and case remanded for proceedings consistent with this memorandum.[2] Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/16/2017

---

[1] In light of our disposition, we need not address Father's remaining issue concerning the trial court's failure "to state the reasons for the assessment of an earning capacity to [Father] in writing or on the record in accordance with Pa.R.C.P. 1910.16-2(d)(4)." Father's Brief at 2.

[2] In the interim, Father shall be held to the earning capacity confirmed by the trial court in its August 31, 2016 order. To the extent that his earning capacity differs in a future order, the trial court shall credit payments going forward.

- 10 -