J-A16003-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| NOREEN S. ROBBINS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RUSSELL W. ROBBINS | : | |
| | : | |
| Appellant | : | No. 1743 MDA 2018 |

Appeal from the Order Entered October 1, 2018
In the Court of Common Pleas of Snyder County Domestic Relations at
No(s):  2017-00045,
PACSES No. 572116488

BEFORE:   LAZARUS, J., MURRAY, J., and STEVENS*, P.J.E.

MEMORANDUM BY LAZARUS, J.:                          **FILED JUNE 21, 2019**

Russell W. Robbins (Father) appeals from the trial court's order, entered in the Court of Common Pleas of Snyder County, assigning Appellee Noreen S. Robbins (Mother) an earning capacity of $9.50 per hour for a 40-hour work week in this support action.  After careful review, we affirm.

A prior panel of our Court set forth the relevant facts underlying this appeal as follows:

> On April 21, 2017, [Mother] filed a complaint for spousal support and child support against [Father].  A support conference was held on May 24, 2017, at which time [Mother] was not employed.  At the conference, the hearing officer assigned [Mother] to an earning capacity to $16 per hour based on upon her prior employment as a certified medical coder.  The trial court entered an interim support order for the parties' three minor children, using [Father's] actual earnings and [Mother's] $16-per-hour earning capacity.
>
> [Mother] filed a timely appeal of the interim order to the Court of Common Pleas, and the trial court conducted a *de novo* hearing

_____
\* Former Justice specially assigned to the Superior Court.

on August 18, 2017. The only item at issue was [Mother's] earning capacity. [Mother] testified that she was fifty-five years old and had a bachelor's degree in elementary education, a master's degree in reading education, and a certificate as a professional medical coder. Most recently, [Mother] worked as a coder from 2008 to 2010 for UPMC and earned approximately $16 per hour.

[Mother] testified that after she gave birth to the couple's triplets ([C]hildren) in 2010, she did not work because of the cost of childcare. She stated that she and [Father] agreed that she would stay at home in part because of the cost of daycare. N.T., 8/18/17, at 8. [Mother] has been a stay-at-home mother for the entirety of [C]hildren's lives. At the time of the *de novo* hearing, [C]hildren were about to start second grade. For these reasons, [Mother] requested that she be imputed an earning capacity of minimum wage for a full-time work week. [*Id.*] at 31. [Father] countered that he did not recall agreeing that [Mother] would remain at home after the first four to five years of [C]hildren's lives. *Id.* at 27.

The trial court determined that [Mother's] earning capacity was $16 per hour over a forty-hour work week. The court used [Mother's] most recent employment information to establish her earning capacity. Of relevance to this appeal, the court found that it would be inappropriate to assess [Mother's] earning capacity at the minimum wage given her education and certification as a medical coder and that [Mother's] efforts to obtain employment were "half-hearted."

*N.S.R. v. R.E.R.*, No. 1374 MDA 2017 (Pa. Super filed April 11, 2018) (unpublished memorandum).

Mother filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, claiming that the trial court abused its discretion in "holding [her] to an earning capacity of $16-per-hour for a job she held seven (7) years earlier and prior to the parties' agreement that [she] would remain in the home to care for [C]hildren."

Mother's Statement of [Errors] Complained of on Appeal, 9/7/17. On appeal, our Court affirmed the trial court's earning capacity determination, concluding that "[t]he record reveals that sufficient evidence was adduced to support the trial court's findings of fact and credibility determinations regarding the lack of an agreement between the parties [concerning Mother being a stay-at-home mom for seven years] and [Mother's] half-hearted efforts to obtain employment commensurate with her earning capacity." *Id.* at 6.

On January 18, 2018, Mother filed a petition for modification of child support based on her allegation that there was a material and substantial change of circumstances regarding her employment at the local elementary school. In her petition, Mother claimed that her income for support purposes should be her actual earnings of $9.50 per hour for a 25-hour work week. On September 21, 2018, the trial court held a hearing on Mother's petition, incorporating the hearing notes from the August 18, 2017 *de novo* hearing. At the time of the hearing, Mother was employed as a utility aide during the school year by the Selingsgrove School District, where her hourly wage is $9.50. She typically works 25 hours a week and is paid biweekly. On September 25, 2018, the Honorable Michael Hudock entered an order finding that Mother should be assigned an earning capacity of $9.50 an hour at a 40-

hour work week, effective January 18, 2018. Father filed a timely notice of appeal[1] and court-ordered Rule 1925(b) statement.

Father raises the following issue for our consideration: Whether the trial court erred as a matter of law and [abused] its discretion in not applying the law of the case established by . . . [J]udge Hudock, affirmed by the Superior Court[,] and, further, in finding that there was a substantial change in circumstances based on [Mother's] testimony[.] Appellant's Brief, at 5.

> When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of that discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

***Arbet v. Arbet***, 863 A.2d 34, 39 (Pa. Super. 2004) (citation omitted).

Generally there is no change to the support obligation following a voluntary reduction of income:

> Voluntary Reduction of Income. When either party voluntarily assumes a lower paying job, quits a job, leaves employment, changes occupations or changes employment status to pursue an education, or is fired for cause, there generally will be no effect on the support obligation.

---

[1] On October 1, 2018, the court entered an interim allocated support order reflecting Mother's new earning capacity.

Pa.R.C.P. 1910.16-2(d)(1). However, when a parent has not voluntarily reduced his or her income to "circumvent his [or her] support obligation" the court "can consider reducing the parent's child support obligation." **See Grigoruk v. Grigoruk**, 912 A.2d 311, 313 (Pa. Super. 2006) (stating court may reduce support obligation when parent is fired for cause and has attempted to mitigate lost income); **see also Kersey v. Jefferson**, 791 A.2d 419, 423 (Pa. Super. 2002) (holding that in order to modify existing support order to reflect reduced income, parent must first demonstrate change was not made to circumvent support obligation).

"Ordinarily, either party to a support action who willfully fails to obtain appropriate employment will be considered to have an income equal to the party's earning capacity." **See** Pa.R.C.P. 1910.16-2(d)(4). The factors considered in determining an individual's earning capacity are "[a]ge, education, training, health, work experience, earnings history and **child care responsibilities**." **Id.** (emphasis added). Moreover:

> [i]n order for an earning capacity to be assessed, the trier of fact must state the reasons for the assessment in writing or on the record. Generally, the trier of fact should not impute an earning capacity that is greater than the amount the party would earn from one full-time position. Determination of what constitutes a reasonable work regimen depends upon all relevant circumstances including the choice of jobs available within a particular occupation, working hours, working conditions and whether a party has exerted substantial good faith efforts to find employment.

Pa.R.C.P. 1910.16-2(d)(2).

At the modification hearing, Mother testified that she had "applied for everything that [she] possibly could" and that to her knowledge she had "applied for every medical coding position that's been available since August the 18th of 2017." N.T. Support Modification Hearing, 9/21/18, at 8. Mother also testified that since August 18, 2017, she had not been offered any positions as a medical coder. *Id.* at 9. As a result, Mother returned to her *per diem* position at the elementary school in August 2017, where she makes $9.50 per hour and works approximately 25 hours per week. Mother also testified that she is currently trying to obtain a full-time position as an income maintenance caseworker with Dauphin County, and has taken an online Civil Service exam for that position. *Id.* at 9, 27.

At the time of the hearing, Mother testified that she continues to take Children to and from school daily, drives them to their multiple sports' practices and extracurricular activities during the week, takes them to Sunday School, and drives them to the majority of their doctor and dentist appointments. *Id.* at 22, 26. Since the last support hearing, Father had asked Mother to exchange Children at 5:00 PM, rather than the initially agreed upon time of 4:30 PM – resulting in Mother having Children an extra half hour every week.

In rendering its decision, the court specifically found that Mother had "exerted substantial good faith efforts to find employment." Pa.R.C.P. 1910.16-2(d)(4). Moreover, in determining what an appropriate earning capacity is for Mother, the court properly considered her child care obligations

and the cost that would be imputed to the parties were Mother to obtain a full-time job which would necessitate Children being placed in pre- and post-school care. *See id.* The trial court also acknowledged that Mother's "accreditation [in medical coding] is in a technical field where the rate of change is lightning speed. . . . I can't imagine she's as desirable as a coding employee as she would have been eight years ago [when she last held a position in the field.]" N.T. Modification Hearing, 9/21/18, at 47-48. In concluding that Mother's earning capacity should be reduced to $9.50 rather than $16.00 per hour, the court made the following statement on the record:

> I understand that [there is evidence that she had an earning capacity of $16/hour, but] that's eight years old in a technical field and she's only in this position because she followed her spouse in his work moves. So I'm going to make this order which is going to direct that the [c]ourt does find, and I'm relying very much on [Rule] 1910.16-(d)(4), which I've cited earlier that there really is no evidence here that she's willfully failed to obtain or maintain appropriate employment.

> I did mention the fact that she's in this position only because she moved I think it was four times in seven years in order to accommodate job changes on the part of [Father]. It's a different world out here. She's a person who is 57 years old, not that that throws you out of the marketplace[,] but it can make you a less desirable employee when you're competing against young people in the technical fields.

> I find that based on her age, education, training, health, work experience, earning history, and child care responsibilities, I'm considering those factors and I find that her earning capacity has not been shown to be currently $16 an hour for a 40-hour per week job[,] but I think that her job as a teacher's elementary school aide is way below her abilities and skills and if she were looking in a different area, she might do better.

> So in the exercise – I also feel that minimum wage is sure, she could get a job at minimum wage[,] but I think she's well-qualified

to do better than that. So what I'm going to do is I'm going to make a finding that she should be assigned because she's demonstrated she can get a job at $9.50 an hour. Granted, it's only 25 hours [a week,] but that to me is an indicator of what her potential is. I'm going to assign her a wage of $9.50 an hour for a 40-hour week. That's going to be the earnings to be assigned to her for purposes of calculating the child support.

*Id.* at 51-52.

Based on our review of the record, we find that that trial court properly considered the requirements of Rule 1910.16-2(d), weighed the record evidence, and assessed Mother's credibility at the September 21, 2018 modification hearing. *See Morgan v. Morgan*, 99 A.2d 554, 559 (Pa. Super. 2014) ("[T]he trial court, as the finder of fact, is entitled to weigh the evidence and assess the credibility of witnesses.") (citation omitted); *see also Krankowski v. O'Neil*, 928 A.3d 284, 286 (Pa. Super 2007) ("A support order will not be disturbed on appeal unless the trial court failed to consider properly the requirements of the Rules of Civil Procedure Governing Actions for Support, Pa.R.C.P. 1910.1 *et seq*., or abused its discretion in applying these Rules."). Accordingly, we find no abuse of the court's discretion in assigning Mother an earning capacity of $9.50/hour based on a 40-hour work week.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/21/2019

- 8 -