J-A01038-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DEBORAH A. MILLER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| Appellee | : | |
| v. | : | |
| | : | |
| | : | |
| REID T. MILLER | : | |
| | : | No. 1294 EDA 2022 |
| Appellant | | |

Appeal from the Order Entered April 8, 2022
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  2021-24531,
PACSES: 275116996


BEFORE:  LAZARUS, J., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY LAZARUS, J.:                **FILED MARCH 13, 2023**

Reid T. Miller (Father) appeals from the order, entered in the Court of Common Pleas of Montgomery County, denying his exceptions and affirming a hearing officer's findings with regard to Father's earning capacity and Appellee Deborah A. Miller's (Mother) income as it relates to the parties' ongoing support matter.[1]  After careful review, we affirm on the basis of the opinion authored by the Honorable Daniel Clifford.

---

[1] Mother's support complaint, filed on March 23, 2018, does not indicate that the parties are divorced.  ***See*** Complaint in Support, 5/23/18, at ¶ 3(c).  In fact, in her February 8, 2022 reply to Father's exceptions, Mother states that "the parties **are married** but still litigating a pending divorce[.]"  Mother's Reply to Father's Exceptions, 2/8/22, at 3 (emphasis added).  To the extent that Father challenges the trial court's award of spousal support and/or alimony *pendente lite* (APL), we conclude that that portion of the trial court's order is not immediately appealable until all claims connected to the parties'

*(Footnote Continued Next Page)*

Mother and Father married in December 2000 and separated in December 2016. Three children were born of the marriage. The parties' oldest son is now emancipated (born 8/03) and their two other children, a daughter and son (Children), are aged 15-years-old and 13-years-old, respectively. Mother is the primary custodian of Children.

Father has multiple academic degrees, including a PhD in biomedical engineering from the University of Pennsylvania. He is a self-employed investment advisor at Miller Group Investments and a part-time adjunct professor at a highly-ranked university. Father worked for Merck & Co., Inc., until 2011 when he was let go due to company restructuring. Other than his role as an adjunct professor, Father has been self-employed since 2011. Mother has an MBA from Villanova University and an undergraduate degree in marketing from The Pennsylvania State University. Mother was employed as a senior marketing executive at a top pharmaceutical company from 1987 to 2010. The parties began a marketing consulting company where Mother performed consulting work from 2011 to 2013, and again in 2015. At the time of the instant proceedings in 2021, Mother was working full-time for Pfizer.

---

divorce action are resolved. *See Leister v. Leister*, 684 A.2d 192 (Pa. Super. 1996) (en banc); *see also* Pa.R.A.P. 341(b)(1). However, "the portion of a trial court order attributable to child support is final and immediately appealable." *Capuano v. Capuano*, 823 A.2d 995, 998 (Pa. Super. 2003).

On March 23, 2018, Mother filed a complaint for support, seeking both alimony *pendente lite* (APL) and child support.[2] On May 8, 2018, the court entered an interim support order determining Mother's monthly net income to be $8,234.80 and Father's monthly net income to be $13,917.71, ordering Father pay $4,070.00 per month in support, and setting arrears, as of May 8, 2018, at $2,959.71. In August 2018, the court entered a per curiam order, as per the Officer's recommendation, holding Mother's support complaint "in abeyance," designating the matter as "complex,"[3] and, by agreement of the parties, modifying Father's arrears payments to $5.00/month. Order, 8/7/18, at 1.

On September 10, 2018, the court scheduled a full-day protracted support hearing for December 10, 2018; however, the hearing was rescheduled for March 21, 2019, to be limited to the scope of the parties' experts' testimony and Mother's rebuttal testimony on any late documents provided by Father. Order, 3/1/19. Following testimony presented by the parties, the Officer issued findings of fact regarding the parties' earning capacities and monthly net incomes, as follows: Mother's net monthly income equal to $6,067.55, Father's net monthly income as $8,836.22, Mother's

---

[2] At the time, all three of the parties' children were minors.

[3] **See** Motion to Designate Case as Complex, 8/22/18 (Mother moving court to designate case complex due to complex issues of law (determining parties' earning capacities) and because parties will require more than 20 minutes to present positions regarding support matters and obligations).

earning capacity as $100,000.00/year, and Father's earning capacity as $150,000.00/year.[4]  **See** Findings of Fact, 5/10/19, at 1.  Based on those figures, the Officer recommended Father pay a total support obligation of $2,877.26 per month, effective March 23, 2018.[5]  On May 29, 2019, the Officer entered a recommended order directing the parties to submit a memorandum regarding the monthly mortgage expenses for the house Mother lives in and Mother's request for a contribution for Children's summer camp and extracurricular activities.  Order, 5/29/19.  The Officer's order also noted that "[t]he time period for filing [e]xceptions shall be extended until after the [a]mended [o]rder is issued."  **Id.**

On July 12, 2019, the Officer issued an amended support order, recalculating the amount Father owed on the monthly mortgage deviation, and now recommending he pay $1,398.51, a $404.27 increase from the Officer's original support calculation.  **See supra** n.5.  Father filed exceptions to the report on July 29, 2019, averring the Officer erred in calculating the parties' earning capacities and the amount he owes toward Children's extracurricular activities (59%) and unreimbursed medical expenses (59%).

_____

[4] Notably, the court's order finds that Mother presented "**extensive** testimony . . . regarding her education, prior earnings, work history and child[]care responsibilities," and Father "presented evidence and testimony regarding his education, work history and prior earnings."  Findings of Fact, 5/10/19, at 1 (emphasis added).

[5] This total figure represents:  $1,752.61/month in child support; $249.15/month for medical insurance; $379.56/month for APL; and $994.24/month for mortgage deviation.

On September 25, 2019,[6] the trial court held oral argument on the exceptions and issued an order remanding the matter and directing the Officer to issue a "thorough analysis and rationale" of how she arrived at the parties' earning capacities[7] that focus[es specifically] on the income flow and the business expenses claimed by [Father]." Order, 9/25/19, at 2.

Subsequently, the Officer issued an amended recommendation and order on November 7, 2019, that included a detailed analysis of how the Officer arrived at the parties' earnings/earning capacities.[8] Notably, the Officer considered that Father's age, health, education, and custodial situation did not negatively impact Father's "employability and ability to earn income in excess of what he claims to have available for support for 2018[, stating,] in fact, the just the opposite is true."[9] Amended Order, 11/7/19, at 2. **See also**

---

[6] The parties stipulated that Father's $112,000.00 contribution to his pension funds in 2017 would not be considered "income" for support purposes, but rather "property" subject to equitable distribution.

[7] Again, the Officer arrived at an earning capacity of $150,000.00/year for Father and $100,000.00 for Mother.

[8] Father was ordered to pay recommended monthly support in the amount of $3,281.53.

[9] Father offered a certified public accountant (CPA) as his expert; the expert testified and prepared a report on Father's net income available for support, which the Officer "found to be persuasive." Order, 11/7/19, at 1. The report included the CPA's examination of the parties' personal tax returns, the business tax returns for all entities, and account statements and documentary evidence of all expenses claimed. **Id.** Father's CPA determined Father's monthly net income available for support in 2018 was $4,566.00, and that
*(Footnote Continued Next Page)*

Pa.R.C.P. 1910.16-2(d). The Officer found that "[Father's] sole cause of his low income . . . is his persistence in remaining self-employed." *Id.* While the Officer found the testimony and analysis of Father's expert witness, Mark H. Bradford, CPA, CFE, "persuasive, reasonable, acceptable and comprehensive," the Officer found Father "less than forthright in his testimony regarding the gross proceeds from his business and[,] in some instances[, he was] **found to have no credibility whatsoever**." *Id.* (emphasis added).

Similarly, the Officer concluded that Mother "is currently under-employed" and assessed her with a $100,000.00 earning capacity. *Id.* at 3. However, the Officer concluded that Mother had "done a comprehensive job search[,] ha[d] expanded her search to include full-time work outside of consulting[, and] ha[d] had interviews." *Id.* Finally, the Officer noted that Mother's job search may have been hindered by her "desire to remain in [a] consulting [position] to manage the [parties' divorce] litigation . . . [and] get the kids situated." *Id.*

On November 26, 2019, the parties filed exceptions[10] and cross-exceptions to the Officer's amended report. However, while those exceptions were pending, Father filed a separate support complaint on December 11, 2019. The court held Father's complaint in abeyance and, on July 21, 2020,

---

Father, who he deemed as "under-employed," has an earning capacity of $150,000/year. *Id.*

[10] Father raised the same exceptions that he raised to the Officer's July 12, 2019 order.

held a hearing on the parties' November 2019 exceptions. On September 30, 2020,[11] the trial judge issued a memorandum and order denying both parties' exceptions/cross-exceptions and concluding that the Officer had not erred in her findings regarding the parties' earning capacities. *See* Order, 9/30/20.

After a March 15, 2021 hearing, at which Mother and Father testified, the Officer entered an interim order (excluding APL payments) holding: (1) in 2020, Father had a $150,000.00 earning capacity and a net monthly income of $9,418.66; Mother had a gross income of $230,712.00 and net monthly income of $12,299.41—Father with 43% and Mother with 57% of total income; and (2) in 2021, Father had a net monthly income of $8,813.00; Mother had a gross income of $190,000.00 and a net monthly income of $11,035.68. *See* Order, 3/18/21 at 1-2.

At hearings held in June and September 2021 with regard to Father's support complaint, Father attempted to offer an expert report illustrating the job applications that he had submitted from 2019 through the date of the last hearing. This evidence, however, would have contradicted his prior testimony regarding seeking alternative employment. Further, Father failed to offer testimony explaining why his circumstances had changed since the last support order had been entered.

Mother, on the other hand, presented rebuttal testimony consisting of the expenses she pays on behalf of Children. At an October 28, 2021 hearing,

---

[11] The suspension of court proceedings due to the COVID-19 pandemic caused the delay on ruling on the parties' exceptions/cross-exceptions.

Father again failed to offer a vocational expert and also disregarded the local rules by not producing his "expert" CPA report until eight days prior to the hearing. At that hearing, Mother's vocational expert testified extensively regarding Mother's earning capacity. The court ultimately set Father's earning capacity range at $201,640.00-$209,158.00, based on "evidentiary documentation," and issued a final recommendation and order on November 26, 2021.[12] Recommendation and Order, 11/26/21, at 1. In that order, the Officer calculated Mother's gross income (from 12/11/19-12/31/20) to be $234,684.00, with a net monthly, post-tax income of $13,289.14. Mother's gross 2021 income was calculated at $225,423.02, with a net monthly, post-tax income of $12,836.43. Father's net monthly, post-tax income was calculated at $8,813.67 (from 12/11/19-12/31/20) and net, monthly 2021 post-tax income was found to be $8,795.20. The Officer also held Father to a $150,000.00 gross yearly earning capacity as per the trial judge's September 30, 2020 order.

On December 16, 2021, Father filed timely exceptions to the Officer's report alleging that the Officer erred by: (1) incorrectly assessing his earning

_____

[12] The Officer's November 26, 2021 order also recommended Mother's APL be terminated effective December 10, 2019. Mother's gross income (from 12/11/19-12/31/20) was calculated at $234,684.00 with a net monthly, post-tax income of $13,289.14. Mother's gross 2021 income was calculated at $225,423.02, with a net monthly, post-tax income of $12,836.43. Father's gross monthly, post-tax income was calculated at $8,813.67 (from 12/11/19-12/31/20) and gross monthly 2021 income was found to be $48,795.20. The Officer also held Father to a $150,000.00 gross yearly earning capacity as per the trial judge's September 30, 2020 order.

capacity at $150,000.00 where the Officer based the calculation on incomplete information dating back to March 2018, and Father was precluded from introducing more information that included his expert's assessment that Father's earnings averaged $58,000.00/year since 2017; (2) ignoring the fact that Mother earned over $200,000.00; (3) not considering Father's fruitless job search or any updated information on his search; (4) failing to consider Mother' tax refund; (5) failing to take Father's 2017 business losses into consideration; (6) failing to appreciate Father's business earnings were "unique and not repeatable;" and, (7) failing to apprehend the impact of contempt[13] on Father's ability to earn. Father's Exceptions to Support Order, 12/15/21, at 4.

The court heard argument on the exceptions and, on April 8, 2022, the trial court denied Father's exceptions and entered the instant memorandum and order affirming the Officer's findings. Father filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Father raises the following issues for our consideration:

(1) Whether the trial judge's exercise of discretion resulted in a misapplication of the law, [] allowed for the law to be

---

[13] From 2019 through 2021, Father was found in contempt more than ten times over the course of this support action. On January 28, 2022, following a hearing, Father was found in contempt and directed to pay $4,000.00 in support arrears. He was also ordered to provide an updated billing/account statement reflecting the balance owned on his 2018 Jeep to the Department of Domestic Relations and to not take any action to jeopardize the status of the vehicle in the event in needs to be sold to cover arrears.

over[r]idden, or constituted an unreasonable exercise of judgment where: [(a)] the trial judge was critical of Father for focusing on his business between the final hearing in March of 2019 (when Father filed his complaint for support over nine (9) months after the last evidentiary hearing that led to the prior final order on September 30, 2020[,] 18 months after the last time evidence had been submitted that led to that order)[,] which in the trial judge's judgment meant that Father was not trying to improve his income; [(2)] where Father . . . made extensive efforts to create the same type of contractual relationship he had enjoyed with Agmem [Pharmaceuticals] in 2017 with over 100 other companies; [(3)] Father had applied to over 300 jobs from December 19, 2019[,] until the October 28, 2021 hearing; [(4)] the support hearing officer would not allow Father's updated job search evidence at that 10/28/21 hearing; [(5)] the hearing officer failed to even reference Father's job search efforts in her opinion; [(6) t]he trial judge found the hearing officer had considered those job search efforts[,] but there was no evidence of that on the record; [(7)] the trial judge referred to Father's request to build on his prior expert report, [which] had already been admitted into evidence, with the expert subjected to cross, as relitigating an issue foreclosed by "the law of the case[;" (8)] Mother's income was over twice the prior earning capacity she had been assigned; [(9)] the trial judge accused Father of some procedural end[-]around to filing his support complaint (in spite of the fact Mother had not timely reported her increased earnings to domestic relations and Mother's drastic increase in income was relevant for the court to consider; [(10)] Father's income replacement and job search efforts had gone on over a longer period of time, indicating to Father that he would continue to have challenges in financial services as long as he was being reported to credit agencies, or had been recently; [(11)] Father simply asserted his legal right to support [and] thought the evidence of the extent, proactivity, and duration of his job search efforts warranted, under the guidelines, a new assessment of his earning capacity versus his actual earnings; and, [(12)] having been criticized [about] tax return information, although he has no criminal record and has always paid his taxes, [Father] offered into evidence more specific earning information showing a reduction in child support was warranted.

(2)    Whether the trial judge's exercise of discretion resulted in a misapplication of the law, [] allowed for the law to be over[r]idden, or constituted an unreasonable exercise of judgment where Mother was allowed to migrate over $23,000 in income from 2021, when it was received[,] and Mother had higher income, back into 2020, allowing her to eliminate that tax refund income from being used to accurately compute support for 2021.

Father's Brief, at 11-12 (unnecessary capitalization omitted).

When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of that discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

**Arbet v. Arbet**, 863 A.2d 34, 39 (Pa. Super. 2004) (citation omitted).

"[A] master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties." **Moran v. Moran**, 2003 PA Super 455, 839 A.2d 1091, 1095 (Pa. Super. 2003). Determinations by a hearing officer, particularly regarding questions of credibility, are to be given the fullest consideration. **Moran v. Moran**, 839 A.2d 1091, 1095 (Pa. Super. 2003). Moreover,

- 11 -

Spousal and child support are to be awarded pursuant to a statewide guideline established by general rule of the Pennsylvania Supreme Court. *See* Pa.R.C.P. 1910.16-1. The support guideline is to be "based upon the reasonable needs of the child or spouse seeking support and the ability of the obligor to provide support." 23 Pa.C.S.A. § 4322(a). The rule further provides that:

> In determining the reasonable needs of the child or spouse seeking support and the ability of the obligor to provide support, **the guideline shall place primary emphasis on the net incomes and earning capacities of the parties**, with allowable deviations for unusual needs, extraordinary expenses[,] and other factors, such as the parties' assets, as warrant special attention.

> A person's earning capacity is defined "not as an amount which the person could theoretically earn, but as that amount which the person could realistically earn under the circumstances, considering his or her age, health, mental and physical condition and training." ***Myers v. Myers***, [] 592 A.2d 339, 343 (Pa. Super. 1991).

***Gephart v. Gephart***, 764 A.2d 613, 615 (Pa. super. 2000)(emphasis added) (some citations omitted).

Father's first issue concerns the Officer's determination of his earning capacity for purposes of calculating his support obligation. Specifically, Father takes issue with the Officer not permitting him "to develop his testimony building upon the expert testimony he paid for in the first round of proceedings when Mother did not proffer an expert." Father's Brief, at 46. Moreover, Father contends that the Officer did not properly apply Pa.R.C.P. 1910.16-2(d) where Father "proactively engaged in an extensive job search" and where "Mother [was] allowed to migrate her income received in 2021 back into her lower earning 2020 year." ***Id.***

- 12 -

When modification of a child support order is sought, **the moving party has the burden of proving by competent evidence that a material and substantial change of circumstances has occurred since the entry of the original or modified order**. The lower court must consider all pertinent circumstances and base its decision upon facts appearing in the record which indicate that the moving party did or did not meet the burden of proof as to changed conditions.

*Samii v. Samii*, 847 A.2d 691, 695 (Pa. Super. 2004) (citation omitted) (emphasis added). Generally, there is no change to the support obligation following a voluntary reduction of income, which is defined as follows:

Voluntary Reduction of Income. When either party voluntarily assumes a lower paying job, quits a job, leaves employment, changes occupations or changes employment status to pursue an education, or is fired for cause, there generally will be no effect on the support obligation.

Pa.R.C.P. 1910.16-2(d)(1). However, when a parent has not voluntarily reduced his or her income to "circumvent his [or her] support obligation" the court "can consider reducing the parent's child support obligation." *See Grigoruk v. Grigoruk*, 912 A.2d 311, 313 (Pa. Super. 2006) (stating court may reduce support obligation when parent is fired for cause and has attempted to mitigate lost income); *see also Kersey v. Jefferson*, 791 A.2d 419, 423 (Pa. Super. 2002) (holding that in order to modify existing support order to reflect reduced income, parent must first demonstrate change was not made to circumvent support obligation).

"Ordinarily, either party to a support action who willfully fails to obtain appropriate employment will be considered to have an income equal to the party's earning capacity." *See* Pa.R.C.P. 1910.16-2(d)(4). The factors

considered in determining an individual's earning capacity are "[a]ge, education, training, health, work experience, earnings history[,] and child[]care responsibilities." *Id.* Moreover,

> [i]n order for an earning capacity to be assessed, the trier of fact must state the reasons for the assessment in writing or on the record. Generally, the trier of fact should not impute an earning capacity that is greater than the amount the party would earn from one full-time position. Determination of what constitutes a reasonable work regimen depends upon all relevant circumstances including the choice of jobs available within a particular occupation, working hours, working conditions[,] and whether a party has exerted substantial good faith efforts to find employment.

Pa.R.C.P. 1910.16-2(d)(2).

At the support modification hearing, Father attempted to offer stale evidence of his income in the form of a pre-2019 expert report, where the expert witness who prepared the report was not even available for cross-examination. *See* N.T. Support Modification Hearing, 6/3/21, at 37-40. Father failed to call a vocational expert, and, instead, attempted to offer an accountant to rebut Mother's expert testimony. In contradiction to his prior testimony at an earlier support hearing, where he testified he chose to remain self-employed, Father testified that he had applied to "four other [executive-level] jobs since . . . the last number [he] updated" and that "when [he] see[s] something . . . of interest [he] appl[ies] for it." *Id.* at 13; *see also* N.T. Support Hearing, 12/10/18, at 133-34 (Father testifying that, despite fact he was in "financial distress," he had chosen to focus on building family financial business as opposed to seeking alternative employment). Not only did the

Officer find that there were no "substantial or material changes" in Father's circumstances warranting a modification of his earning capacity, the Officer also noted that Father's child care responsibilities had actually decreased since the last hearing. Officer's Findings of Fact and Recommendation & Order, 11/26/21, at 1.

Perhaps the Officer best expressed Father's intention in filing his support complaint when he noted, "[t]hroughout the numerous days of hearings in this matter[,] it became clear that Father sought to re-litigate the finding contained in the [o]rder of November 7, 2019[,] concerning his earning capacity. The only material change of circumstances that has occurred in this case is Mother's earnings[.]" *Id.* Accordingly, Father's issue is meritless where he failed to show a "material and substantial change in circumstances" since the court entered its prior support order. *See Soncini v. Soncini*, 612 A.2d 998, 1000 (Pa. Super. 1992) ("[A] court may only modify an existing support award when the party requesting the modification **shows a material and substantial change in circumstances since the order was entered**.") (emphasis added).

Father next contends the court impermissibly permitted Mother to eliminate tax refund income of $23,000.00 when it computed her income for support purposes. Instantly, the Officer concluded that Mother's economic circumstances had materially changed in 2020 and 2021, due to a new full-time position, where her actual earnings exceeded the earning capacity that had originally been attributed to her in 2019. Accordingly, the Officer used

- 15 -

the new figure to re-calculate her earning capacity based upon this increased gross income. The Officer also factored Mother's actual tax obligation into her monthly income calculation, so the 2020 income tax refund was not actually "added back" and, therefore, was not a double dip. Thus, this claim also has no merit.

After a review of the record, the parties' briefs, relevant case law, and statutory authority, we find that the trial court did not abuse its discretion when it denied Father's exceptions and affirmed the Officer's recommendations. **Arbet**, **supra**. The trial court's opinion accurately explains and supports the Officer's determination of the parties' earning capacities and incomes in this support matter. **See Calabrese v. Calabrese**, 682 A.2d 393, 395 (Pa. Super. 1996) ("When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground."). We, therefore, rely upon Judge Clifford's August 22, 2022 opinion in affirming the order denying Father's exceptions and affirming the Officer's recommendations. We instruct the parties to include a copy of Judge Clifford's decision in the unfortunate, yet more than likely, event of further proceedings in the matter.

Order affirmed. Application for Relief denied.[14]

---

[14] Father has also filed an application for relief asking this Court to remand the instant matter for "the presentation of his accountant's testimony as to [Father's] actual current income." Application for Relief, 1/18/23, at 1. After consideration, we herein deny the application where it is nothing more than another attempt by Father to have the court accept evidence for the purposes of relitigating his earning capacity.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>3/13/2023</u>